[S. F. No. 16187. In Bank.—May 22, 1939.]

COUNTY OF LOS ANGELES (a Body Corporate and Politic), Petitioner, v. ALFRED JONES, as County Surveyor, etc., Respondent.

J. H. O'Connor, County Counsel, and A. Curtis Smith, Deputy County Counsel, for Petitioner.

O'Melveny, Tuller & Myers and James L. Beebe for Respondent.

SHENK, J.—A rehearing was ordered for the purpose of giving counsel an opportunity to discuss the method of spreading the refunding assessments under the act here involved, and to give consideration to the contention that the interpretation of section 31 thereof (Stats. 1937, p. 2381), announced in our previous decision would make multiple district refunding proceedings unworkable and therefore unavailing for the purpose intended by the legislature.

Our prior opinion with some modification is adopted in part as follows:

"The County of Los Angeles seeks the issuance of the writ of *mandamus* to compel the respondent, as its county surveyor, to spread a reassessment upon the real property in districts numbers 32, 40 and 240 in said county pursuant to the Assessment Bond Refunding Act of 1933. (Stats. 1933, p. 1915, as amended; Stats. 1937, p. 2381.)

"The petition shows that Acquisition and Improvement District No. 32 was organized under the Acquisition and Improvement Act of 1925. Bonds were issued on April 4, 1937, in the sum of $48,151.94, bearing interest at seven per cent annually. The bonds represented the cost of installation of an ornamental street lighting system. District number 40 is a special improvement district organized also under the act of 1925, for the same class of improvements. Bonds of that district were issued on the same date in the sum of $34,864.06, bearing interest at seven per cent. Similarly under the 1925 act, district number 240 was organized for the purpose of installing a sanitary sewage system and to meet the cost thereof. Bonds of that district were issued on February 3, 1930, in the sum of $170,086.83, with an interest rate of six per cent.

"The board of supervisors of the county of Los Angeles instituted the original proceedings in each instance. On January 18, 1938, the board of supervisors determined that the public interest, convenience and necessity required the refunding of the bonds of all three districts in one proceeding pursuant to the provisions of section 31 of the 1933 refunding act as amended by Statutes of 1937, page 2370, at page 2381.

"The proceeding progressed to the point where, after due demand by the board, the respondent county surveyor refused to make a diagram of the property upon which the reassessment was proposed to be levied and to prepare one reassessment on the various parcels for the proportion of the refunded

unpaid balance of the cost of all improvements in proportion to the benefits received.

"The regularity of the proceedings thus far is not questioned. The demurrer filed by the respondent raises the question of the constitutionality of the 1937 amendment to section 31, which provides for so-called 'multiple district refunding' in one proceeding. The portions of the amended section which are pertinent to the present discussion are:

" 'When all or any part of the lands in any district, the indebtedness of which could be refunded under the provisions of this act, lie in any other district or districts, the indebtedness of which could be refunded under the provisions of this act, all or any number of such districts which wholly or partially overlap may be included in one refunding proceeding and the total indebtedness of all of the districts so included in one proceeding may be refunded in such proceeding and one issue of refunding bonds issued and one reassessment levied therefor. It is the intent of this section to permit, but not to require, the refunding in one proceeding of the indebtedness of all districts which wholly or partially overlap, and to authorize the refunding in one proceeding of the indebtedness of any number of districts where some part of the area of each of the districts lies wholly or partially within the boundaries of one or more of the other districts included in the same refunding proceedings, and such refunding in one proceeding of the indebtedness of two or more districts may be called "multiple district refunding". . . . The provisions of this section are to be liberally construed, to the end that jurisdiction to refund in one proceeding the indebtedness of any and every combination of districts now existing shall be full and complete.'

"It is further provided by the section that the resolution of intention and all the required notices shall state 'that the refunding shall not be authorized unless the consent of the owners of a majority in area of the lands included within each of the districts, who shall likewise be the owners of a majority in area of the lands included within the exterior boundaries of the total area which comprises the districts, is filed with the clerk of the legislative body conducing the proceeding, . . . If, at the hearing provided in section 3 hereof, the legislative body determines that the written consent of the owners of a majority in area of the lands in each of the dis-

tricts, who are likewise the owners of a majority in area of the lands included within the exterior boundaries of the total area comprising the districts, has been filed, it shall be authorized to proceed with such multiple district refunding and to make a reassessment and issue refunding bonds therefor as in this act provided. The reassessment shall be spread over all of the lands in the total area comprising the districts and subject to tax or assessment for the payment of principal and interest of any of the bonds of the districts to be refunded in the proceeding.' The total reassessment is provided to be spread 'against all of the lands subject to reassessment hereunder within the total area comprised by the districts and benefited by the acquisitions or improvements or acquisitions and improvements, and upon each lot, piece or parcel thereof in proportion to the estimated benefits received by each such lot, piece or parcel of land from the acquisitions or improvements or acquisitions and improvements to pay for which the indebtedness proposed to be refunded was incurred'. The section also contains the following provisions: 'In the event that the holders of one or more of the outstanding bonds of any of the districts included in the multiple district refunding proceeding do not enter [into] any contract with the legislative body to refund the same, nevertheless, if the holders of 75% or more of the total amount of the outstanding bonds of all of said districts do contract with the legislative body which conducts the refunding proceedings for the refunding of the bonds owned or held by them, said legislative body shall have authority to refund all of the indebtedness of the districts included in such multiple district refunding proceeding under the provisions of this act, but, in such event, prior to recording the reassessment levied under this act, sufficient moneys to adequately provide for the retirement or payment of the bonds of the nonconsenting holders must be provided and set aside in the proper fund or funds for that purpose.'

"The petition herein also discloses that districts numbers 32 and 40 do not overlap each other, but that district number 240 partially overlaps district number 32 and wholly overlaps district number 40. The outstanding indebtedness of district number 32 is $16,815.43; of district number 40, $16,878.85; and of district number 240, $190,901; a total for all three districts of $224,595.28. The proposed total maximum reassessment for all three districts is $139,980.29, payable over a

nine-year period, with the interest rate reduced to five and one-half per cent annually. It also appears that a hearing was duly noticed and held at which protests of property owners were considered; that written consents were on file of the owners of a majority in each of the districts who likewise are owners of a majority in area of the land within the exterior boundaries of all three districts. In the pending reassessment proceeding it is contemplated that the *ad valorem* method of assessment under the 1925 act shall be replaced by a specific lien assessment against the lands included within the exterior boundaries of all three districts in proportion to the benefits received by each parcel from the improvements to pay which the indebtedness proposed to be refunded was incurred. No contention is made that at least 75 per cent of the bondholders have not consented, or that sufficient moneys are not provided for the retirement of the bonds of any nonconsenting bondholders.

"The question posed by the respondent is: 'Do the provisions of the Assessment Bond Refunding Act of 1933, authorizing the refunding in one proceeding of the indebtedness of two or more *ad valorem* assessment districts by the levy of one specific lien reassessment and the issuance of one issue of refunding bonds, when the owners of a majority in area of the land in each of said districts constituting the owners of a majority in area of the land in all of said districts, have consented thereto, impair contract rights or vested rights of property owners in the respective districts?'

"The respondent concedes the practical necessity for multiple district refunding proceedings, that is, the impossibility, practically, to refund or adjust the indebtedness of one of several overlapping districts without at the same time adjusting the indebtedness of the others. He contends, however, that to spread the multiple district refunding reassessment upon all the lands in the total area comprised of the three original districts in proportion to benefits from all of the acquisitions and improvements of the several districts violates the contract clause of the state and federal constitutions, impairs vested rights, and takes property without due process of law.

"The validity of the refunding statute of 1933 as amended has been considered and determined in the recent cases of *County of Los Angeles* v. *Jones,* 6 Cal. (2d) 695 [59 Pac. (2d) 489]; *City of Los Angeles* v. *Aldrich,* 8 Cal. (2d) 541

[66 Pac. (2d) 647], and *City of Culver City* v. *Reese,* 11 Cal. (2d) 441 [80 Pac. (2d) 992]. Each of those cases involved the refunding of the indebtedness of but one improvement district.

"The petitioner relies on cases such as *City of Los Angeles* v. *Los Angeles Flood Control Dist.,* 11 Cal. (2d) 395 [80 Pac. (2d) 479]; (affd. 306 U. S. 459 [59 Sup. Ct. 622, 83 L. Ed. 921]); *Ferry* v. *O'Brien,* 188 Cal. 629 [206 Pac. 449]; *Palo Verde Irrigation District* v. *Seeley,* 198 Cal. 477 [245 Pac. 1092]; *Cowart* v. *Union Paving Co.,* 216 Cal. 375 [14 Pac. (2d) 764, 83 A. L. R. 1185], and others, which upheld legislation providing for reassessment for public improvements under special circumstances not here involved.

"If the plan of reassessment proposed by the petitioner contemplates that land in one of the overlapping districts may bear a proportion of the assessment for improvements in another district, although such land was not included in the latter district originally and, inferentially, at least, found not to have been benefited by the improvement, difficulties might be encountered giving rise to questions which are not here necessary to decide. The petitioner emphasizes, however, that the additional assessment will not be levied unless such land in one district is shown actually to have benefited by the improvements in the other district. Both the petitioner and the respondent seem to assume that the language of section 31 as amended directs or authorizes the reassessment on lands not originally found to have been benefited by the improvements. We find no expression in section 31 which would warrant this court in concluding that the legislature intended the authorization thus apparently assumed. The pertinent language of the section which bears upon the extent of the area to be affected by the reassessment is the following:

" 'The reassessment shall be spread over all of the lands in the total area comprising the districts and subject to tax or assessment for the payment of principal and interest of any of the bonds of the districts to be refunded in the proceeding . . . The total amount . . . shall be assessed upon and against all of the lands subject to reassessment hereunder within the total area comprised by the districts and benefited by the acquisitions or improvements or acquisitions and improvements, and upon each lot, piece or parcel thereof in proportion to the estimated benefits received by each such lot, piece or par-

cel of land from the acquisitions or improvements or acquisitions and improvements to pay for which the indebtedness proposed to be refunded was incurred.'

█ "Does the foregoing language indicate a legislative intent that the 'estimated benefits' shall include benefits derived from all public improvements involved in the multiple district refunding proceeding, even though such land was not determined originally to have been benefited thereby? Or does the language import an intent that the 'estimated benefits' are restricted to benefits which were determined to have been received in the original proceeding? It might be argued that the use of the conjunctive and disjunctive in referring to the acquisitions and improvements of all districts indicated the interpretation suggested by the first question. But that interpretation would contemplate that by the refunding an additional assessment could be levied upon lands for an improvement on account of which they were not theretofore assessable. We take it that if the alternative construction indicates the proper intent and meaning of the statute, no possible objection could be presented against reassessing upon each parcel of land in one sum the proportionate amounts which would be due for each of the improvements from which originally it was determined to have derived a benefit. This conclusion might not permit the petitioner to go the full length intended by the present refunding proceeding; but in our opinion it accomplishes the object of the statute within its express terms.

█ "The language presented for interpretation by this proceeding is subject to the rule of strict construction. (*East Bay Municipal Utility Dist.* v. *Garrison,* 191 Cal. 680, 688 [218 Pac. 43] ; *Mulvill* v. *City of San Diego,* 183 Cal. 734 [192 Pac. 702] ; *Merced County* v. *Helm,* 102 Cal. 159 [36 Pac. 399] ; *Creighton* v. *Manson,* 27 Cal. 614, 629; 23 Cal. Jur., pp. 805, 806; 24 Cal. Jur., pp. 22, 28, and cases cited.) The rule of interpretation is stated in *Merced County* v. *Helm, supra,* p. 165, as follows: █ 'Any attempt on the part of the state, or of the county as one of the subdivisions of the state, to take the property of an individual for public purposes by way of taxation, must find an express statutory warrant, and all laws having this object are to be construed strictly in favor of the individual as against the state . . . the proceeding is *in invitum,* and no presumption is to be indulged in

favor of the right to take the property or of any intention that is not distinctly expressed in the statute under which it is sought to be taken . . . (Citing cases.) A tax can never be extended by construction to things not named or described in the statute as the subject of taxation.'

██ ''The application of the foregoing rule would result in confining the 'estimated benefits' intended as the measure of the reassessment, to those benefits determined in the original proceeding or proceedings to have been received by the land within the district or districts. If the legislature intended to authorize the extension of the assessment for the improvement to lands not originally determined to have been benefited thereby, it could have said so in unmistakable terms, in which event other objections not now necessary for determination could be presented.

''It therefore becomes unnecessary to decide in this proceeding the question of the constitutionality of the section had it authorized such additional assessment on lands outside of the district originally determined to include all the lands benefited by the improvement. No contention is made, nor could a contention successfully be made, that the section as amended does not otherwise conform in all respects to the requirements of the Constitution as expounded in the cases hereinabove cited bearing upon the validity of refunding assessment acts. ██ The fact that the outstanding obligations of three improvement districts are permitted to be refunded in one proceeding and by the imposition of an assessment in one sum on each parcel of land affected thereby, may not alone be the basis of any meritorious objection on constitutional grounds.''

██ It is now contended that the foregoing precludes the spread of overages, which occur in computing the specific reassessments, to any district included in the proceedings other than the district as to which the particular overage is applicable. Counsel urge the court to decide the question whether the method of computation and levy of the reassessment in the multiple district refunding proceeding permits the spread or apportionment of overages amongst all the districts in the refunding proceeding without regard to district boundaries.

Counsel now set forth the method of spread so far used in applying the provisions of section 31 of the act, as follows:

"First, the county surveyor takes the total amount of the proposed reassessment and apportions that between the districts in accordance with the outstanding indebtedness of each. Then to the sum so apportioned to each district he adds the amount of the *ad valorem* assessments, paid into the interest and sinking fund of that particular district. The total of these two amounts is spread upon all of the lands in the district in proportion to the benefits from the improvements constructed for the district. When this separate spread has been made for each of the districts involved in the multiple refunding, the amounts spread upon any parcel of land lying in two or more districts are added together and make a total sum. This spread of the assessment is sometimes referred to by engineer and attorneys as the gross spread or gross assessment. When this gross spread or gross assessment has been made, then the credits to which each parcel of land is entitled, by reason of the *ad valorem* assessments levied upon it and paid into the interest and sinking fund of all of the districts in the multiple refunding proceeding, are deducted from the gross assessment spread upon the parcel."

It is contended that this or some similar method of gross spread and computation of credits is prescribed by the provisions of section 31 of the act, as opposed to the single district method of arriving at the amount of the net reassessment; that a method of employing a gross spread is necessary in order to accomplish the objects of multiple districts refunding, namely, so to reduce and redistribute the burden of the original assessment that all delinquent lands will be restored to the tax roll, and in the process to change the *ad valorem* method of assessment on one parcel of land lying within several districts to one specific lien for the entire balance due from that parcel on account of the indebtedness of the several districts within which it lies. The provisions alluded to are, that the total amount of the proposed reassessment shall be fixed in the resolution of intention; that the reassessment shall be spread over all of the lands in the total area comprising the districts; that to the total sum of the reassessment shall be added the total sum of all assessments, including interest and penalties, paid into the interest and sinking fund of any of the districts; that the total amount of the two sums thus ascertained shall be assessed upon and against all of the lands subject to reassessment within the total area comprised by the

districts and benefited by the acquisitions or improvements in proportion to the estimated benefits received by each parcel of land.

Counsel argue that it is apparent that there is but one assessment to be levied which shall be fixed in the resolution of intention and be spread over all the lands in the total area without any requirement that any individual district be used as a basis for refunding. Nevertheless there is also included in the section the provision that the assessment must be spread ''in proportion to the estimated benefits received by each such lot, piece or parcel of land from the acquisitions or improvements or acquisitions and improvements to pay for which the indebtedness to be refunded was incurred''. It would appear that the gross reassessments and credits may be calculated for all districts before the individual reassessment is determined. But in computing the gross amount to be levied upon any specific parcel of land, the legislature nowhere has expressly declared that the amount so levied may be in proportion to benefits received by such parcel from improvements in districts in which that parcel was not originally included and therefore as to which it was not originally declared to have been benefited. The legislature has not expressly nor by necessary implication found that the lands in one district have been benefited by improvements in such other districts, as was the case in *City of Los Angeles* v. *Los Angeles Flood Control District, supra.*

Counsel invoke the further provision of section 31, which reads: ''This act is remedial in nature and shall be liberally construed.'' Liberal construction may be accorded to the remedial provisions of said section and of the act, including provisions pertaining to the regularity of the refunding proceeding and to the method of redistribution on reassessment. But the legislative exhortation is not to be extended to justify a declaration of a power to tax which was not granted either expressly or by necessary implication. This conclusion is not in disregard of the provision enjoining a liberal construction of the statute. On the other hand, our conclusion defining the extent of the exercise of the taxing power does not prevent full scope and broad application being given to the remedial provisions of the act in the absence of any showing that the constitutional rights of the property owner would thereby be violated. We are of the opinion that

such a showing has not herein been made. It is of no legal concern to the property owner that overages may be created and that such overages may be distributed to equalize the burden upon such lands so as to effect the salutary purposes of the act. The property owner has no vested or contract right to any particular application of overages, contributions, readjustments, or reductions from any source in computing the amount of the gross reassessment. He may therefore have no valid objection to a distribution or redistribution of such overages or other credits in reduction of the gross reassessment, on any appropriate basis determined by the legislative body conducting the refunding proceeding.

The petitioner therefore is entitled to the issuance of the writ directing the respondent, as surveyor of the County of Los Angeles, to prepare a diagram and make the reassessment upon the lands involved in the pending proceeding in conformity with the views herein expressed.

Let a peremptory writ issue accordingly.

Curtis, J., Seawell, J., and Waste, C. J., concurred.