[Civ. No. 19707.   Second Dist., Div. Three.   Mar. 29, 1954.]

CITY OF LOS ANGELES, Respondent, v. SAMUEL COHEN, Appellant.

Samuel Cohen, in pro per., for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and James A. Doherty, Deputy City Attorney, for Respondent.

SHINN, P. J.—Defendant appeals from a judgment in favor of the city of Los Angeles for unpaid license taxes imposed under section 21.108 of the city license ordinance.[1] The ordinance excepts the business of engaging in transactions for the purchase or sale of real property and of making loans secured by liens upon real property.

The facts for the most part were stipulated and the remaining facts are not in dispute. The question is whether defendant was engaged in the business of purchasing or discounting or arranging for the purchase or discounting of any obligation of money due or to become due, or any evidence of any obligation of money due or to become due or the loaning of money or advancing credit, within the meaning of the ordinance.

The material facts are the following: By agreement with Modern of October 31, 1947, defendant obligated himself for one year to purchase from Modern Picture Frame Company such accounts receivable as were acceptable to him; he had the exclusive right to purchase them; he agreed to pay the full face value of the accounts so purchased less a trade discount of 2½ per cent, without recourse to Modern for credit losses; defendant was to pay on the date of purchase 72½ per cent of the face amount of the invoices less trade discounts; he was to retain 25 per cent as security for faithful performance of the agreement by Modern, but was to pay the 25 per cent retained as a reserve on the 10th day of the month following payment of the account by the customer to Modern. The terms of payment were modified by agreement of February, 1948; defendant was to retain at all times $500 as security for faithful performance of the agreement and upon the date of purchase was to pay Modern 95 per cent of the face amount of the accounts less trade discounts. In March, 1949, the agreement was again modified, particularly with reference to the accounts of approved chain stores and department stores.

---

[1]"Sec. 21.108. Subject to the proviso contained in the second paragraph of this section, for every person engaged in the business of loaning money, advancing credit, or loaning credit or arranging for the loan of money or advancing of credit or loaning of credit for and on his own behalf or on behalf of any other person as principal, agent or broker, whether security of any kind is taken for such loan or advance or not, or purchasing or discounting or arranging for the purchase or discounting of any obligation of money due or to become due, or any evidence of any obligation of money due or to become due, whether such obligation or evidence is secured, guaranteed or not, and whether the person so purchasing or arranging for the purchase of the items aforesaid acts as principal, agent or broker, the sum of $300.00 per year for each such person; . . ."

During the year 1948 defendant issued approximately 75 checks totalling $120,990.66 in exchange for assignment of approximately 75 schedules of accounts receivable embracing 2,033 invoices. During 1949 he issued 75 checks totalling $96,718.58 in exchange for assignment of approximately 75 schedules of accounts embracing 1,612 invoices. During 1950 he issued approximately 40 checks totalling $57,466.67 in exchange for assignment of approximately 40 schedules of accounts embracing 957 invoices. The total number of checks was approximately 190, for $275,175.91, and the invoices numbered 4,602. In addition defendant guaranteed the account of Modern with Hammond Lumber Company to the extent of $5,000 for which no additional charge was made. He sustained certain losses but he also profited in a substantial amount. The parties agree that defendant devoted but three or four hours a week to his business with Modern and that he realized profits of about $2,000 a year.

Plaintiff has prepared his own briefs. His argument runs somewhat as follows: He is, by profession an accountant, accustomed to making $40,000 or $50,000 a year, although he was not actively engaged in his profession during the years in question; Modern was owned by a family named Marion; the company was in financial difficulties and without sufficient credit to enable it to sell its accounts at a bank; Mr. Marion was a personal friend; defendant undertook to help out in the situation by purchasing Modern's accounts; he did not purchase accounts from anyone else; he engaged only in a series of casual and occasional transactions; the attorney who drew the contract advised him that he would not need a license if he dealt with only one client and did not hold himself out to the public as engaged in the finance business; a deputy city clerk told him the same thing; he did not hold himself out as being engaged in the finance business and he devoted but a small part of his time to his transactions with Modern; his charges were less than would have been made by those regularly engaged in similar activities. His sole motive was to help out a friend during a critical period and not to earn a livelihood. These arguments do not go to the heart of the question whether defendant was engaged in the business of ". . . purchasing or discounting or arranging for the purchase or discounting of any obligation of money due or to become due, or any evidence of any obligation of money due or to become due . . ." within the purview of section 21.108 of the ordinance.

■ In the *Matter of Application of Smith*, 33 Cal.App. 161, 163 [164 P. 618], the court said: "Business is defined as that which occupies the time, attention, or labor of men for the purpose of profit or improvement." In 5 Words and Phrases, page 998 et seq., will be found a collection of cases from many jurisdictions which hold that " 'Business,' in a legislative sense, is that which occupies the time, attention, and labor of men for purposes of livelihood or for profit; a calling for the purpose of a livelihood." It is used in the latter meaning in the statutes relating to license taxes. (See also 12 C.J.S. p. 765 et seq.) ■ The words "engage," "engaged," and "engaging" relate to and connote frequency and continuity of action. Cases so holding are collected in 14A Words and Phrases, page 188 et seq. ■ It is, of course, well established that a single or occasional disconnected act does not constitute "engaging in business."

■ Over a three-year period plaintiff issued 190 checks in 190 transactions and purchased altogether 4,602 invoices under an agreement by which he bound himself for a period of one year to purchase Modern's accounts which were acceptable to him. There was both frequency and continuity in these transactions. Defendant derived substantial profits. The fact that he was at the same time accommodating a friend has no bearing upon the nature of the business, and since he derived profits from the business it is of no consequence whatever that he was led into the business by motives of friendship rather than the expectation of profit. He is deserving of credit, of course, but not on his tax liability. Neither is it of any consequence that he may not have been dependent upon the business for his livelihood, and devoted but little time to it. The fact that he had but a single client and did not solicit business from others has no bearing upon the nature of the business. In short, the question is not even a close one. Defendant had no tenable grounds nor reasonable excuse for refusing to pay the tax imposed by the ordinance.

The record does not support defendant's contention that he was not afforded a full opportunity to present his defense. He was permitted to argue, and to file points and authorities.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied April 27, 1954, and appellant's petition for a hearing by the Supreme Court was denied May 27, 1954.