[Civ. No. 6476. Fourth Dist. Aug. 9, 1961.]

HAROLD CHILD et al., Respondents, v. WILLIAM E. WARNE, as Director of Agriculture, Defendant and Appellant; FRANK CAPRA et al., Interveners and Appellants.

Stanley Mosk, Attorney General, Walter S. Roundtree, Assistant Attorney General, and Alberta Gattone, Deputy Attorney General, for Defendant and Appellant.

Sachse & Price, Franz R. Sachse, Tuttle & Taylor and William A. Norris for Interveners and Appellants.

George Stahlman and Robert S. Walwick for Respondents.

COUGHLIN, J.—This is an appeal from a judgment enjoining the Director of Agriculture from enforcing a marketing order for the promotion of California avocados. The plaintiffs, who appear here as respondents, are growers and handlers of avocados. The defendant, as an appellant herein, is the Director of Agriculture of the State of California. Other avocado growers and handlers filed a complaint in intervention in support of the order, and appear here as appellants.

The marketing order in question was issued by the Director of Agriculture pursuant to the California Marketing Act. (Agr. Code, div. 6, chap. 10, §§ 1300.10-1300.29.) The plaintiffs contend that, in making such order, the director did not comply with the procedure prescribed by that Act; that the order is invalid for this reason; and that the judgment of the trial court enjoining its enforcement was proper.

As applied to the facts in this case, the Act provides that no marketing order shall become effective until the director finds that such order has been assented to in writing by "producers" who produce not less than 65 per cent of the volume of avocados produced and by 51 per cent of the total number of "producers" so engaged. (Agr. Code, § 1300.16, subd. (a)(2)(B).) As a part of the process incident to the making of such a finding the director is required to prepare a list of names of the avocado "producers" who will be directly affected by the proposed marketing order and the volume of avocados produced or marketed by them in the preceding marketing season. (Agr. Code, § 1300.13, subd. (d)(3).) The alleged invalidity of the marketing order under consideration stems from the manner in which the director prepared the aforesaid list for use in the subject proceeding.

A determination of the issue thus presented requires a consideration of the procedure adopted by the Agricultural Director as related to and governed by the purposes and provisions of the Marketing Act.

The purposes of the Act are set forth in section 1300.11 of the Agricultural Code; are concisely stated in *Brock* v. *Superior Court,* 109 Cal.App.2d 594, 598 [241 P.2d 283]; and include the restoration and maintenance of adequate purchasing power for California agricultural producers. With

respect to the latter purpose, the Legislature declared that, as a consequence of certain marketing practices, the purchasing power of agricultural producers "has been in the past, and may continue to be in the future, unless such conditions are remedied, low in relation to that of persons engaged in other gainful occupations within this State," and that such "producers are thereby prevented from maintaining a proper standard of living and from contributing their fair share to the support of the necessary governmental and educational functions, . . ." (Agr. Code, § 1300.10, subd. (a).) The expressed purposes of the act and the aforesaid declaration of the Legislature, as will appear from the consideration hereinafter given them, are pertinent to a determination of the meaning of the term "producers" which is a vital issue in this case. As heretofore noted, one of the steps in the process of adopting a marketing order requires the Director of Agriculture to compile a list of the producers of the agricultural commodity which is the subject of such order. (Agr. Code, § 1300.13, subd. (d)(3).) The act defines a producer as "any person engaged within this state in the business of producing, or causing to be produced for market, any agricultural commodity as herein defined." (Agr. Code, § 1300.12, subd. (d).) The director interpreted this definition to include only those persons engaged in the *business* of producing avocados or engaged in the *business* of causing avocados to be produced for market. The plaintiffs contend that the definition includes persons engaged in the business of producing avocados and persons causing avocados to be produced for market; that the limiting phrase "the business" applies only to those who are producing avocados and not to those who are causing avocados to be produced; and that the director's interpretation is erroneous. The trial court found in accord with the plaintiffs' contention.

In preparing the list of avocado producers which was used in this case, the director followed his interpretation of the statutory definition and not that contended for by the plaintiffs. The preparation of this list occurred in the course of the proceedings resulting in the issuance of the marketing order in question. Preliminarily, a group of persons associated with the avocado industry formed a committee, known as the Avocado Promotion Committee, and requested the Director of Agriculture to cause a public hearing to be held on a proposed marketing order for avocados. Section 1300.13

of the Agricultural Code provides for such a meeting; requires that a notice thereof be given to all "producers" or "handlers"[1] of the subject commodity whose names and addresses appear upon lists of such persons on file in the Department of Agriculture; in the event the information with respect to the names and addresses of persons who might be directly affected by the proposed marketing order is not on file with the department, authorizes the director to notify all handlers of such commodity to file a report, showing among other things, the names and addresses of all producers from whom the handlers received such commodity in the marketing season next preceding the filing of such report, together with the quantities so received from each such producer; provides that a failure by any handler to file such a report "shall not invalidate any proceeding taken or marketing order issued hereunder" and that the "director is authorized and directed to proceed upon the basis of such information and reports as may otherwise be available"; and directs that from the "reports so filed and the information so received or available to the director, including any proper corrections," he shall prepare a list of the names and addresses of such producers and the volume of such commodity "produced or marketed" by them. The statute does not provide when this list shall be prepared, although it is clear that any list used as a basis for giving notice to producers of the meeting respecting the proposed order may not be the final list used by the director as an aid in making his finding as to whether the designated percentage of producers have assented to the proposed marketing order, because section 1300.13 also provides that at the hearing in question the director shall receive testimony and evidence not only upon matters concerning the need for and propriety of the proposed marketing order, but also "with respect to the accuracy and sufficiency of the lists on file with the director which show the names of the producers . . . directly affected by the provisions of such proposed marketing order." (See Agr. Code, §§ 1300.13, subd. (c)(4) and 1300.14.) The provision of the statute requiring the director to prepare a list of producers does not limit his sources of information to the reports which he receives from the handlers

---

[1]"Handler" means any person engaged within this State as a distributor in the business of distributing an agricultural commodity in intrastate commerce, or any person engaged as a processor in the business of processing an agricultural commodity. (Agr. Code, § 1300.12, subd. (e).)

of the commodity but permits him to use such information and reports as may otherwise be available, "including any proper corrections." (Agr. Code, § 1300.13, subd. (d)(2) and (3).) Obviously, the statute conceives the possibility that the information given by the handlers in their reports may not be accurate.

In the case at bar the director had no lists of producers available at the time the Avocado Promotion Committee requested a public hearing upon a proposed marketing order, and prepared such a list from the reports given him by handlers in response to the statutory notice requesting such; all of the handlers responded to this notice and furnished the director with the names of persons who had sold avocados to them; from the names so furnished, a list of 9,900 such persons was compiled; notice of the public hearing was sent to all these persons; and, thereafter, copies of the proposed marketing order and written assent forms were sent to them. Under the act, the required percentage of assents is determined by the ratio which the number of persons assenting bears to the total number of persons on the director's list; an assent constitutes an affirmative vote in favor of the proposed marketing order; a dissent or a failure to return the assent form constitutes a negative vote. As required by law, the director fixed the time within which assent should be returned and tabulated. (See Agr. Code, § 1300.16, subd. (a) (4).) Before the expiration of this time it came to the attention of the director, from some of the replies to the assent forms which had been returned and from a complaint made by the Avocado Promotion Committee, that some of the persons on his list were not producers within the statutory definition of that term as interpreted by him; were not in the business of producing avocados; but were what he called "back-yard growers," i.e., householders who had two or three trees in their back yards. After consultation with members of his staff, the director decided to send a letter to all of the growers on his list who, during the preceding year, had sold 1,000 pounds or less of avocados to the handlers who furnished him with their names, seeking information which would enable him to determine whether these persons were engaged in the business of producing avocados or the business of causing the production of avocados. The letter[2] which

[2]The letter in question read:
"In connection with formulation procedures for the Marketing Order for the Promotion of California Avocados, the Bureau of Markets is

was dated December 10, 1959, in substance, related the reason for its being sent; posed the question whether, in the light of the quantity of avocados marketed by him, the addressee was engaged in the business of producing avocados; and advised that unless a reply on an enclosed form was returned by a specified date that the director would remove the name of the addressee from "the official list of producers." This letter, together with a reply form and a stamped, self-addressed, return envelope, were sent to about 3,500 persons selected from the previously compiled list; 634 replies were received, from which the director determined that 502 were in the business of producing avocados; these 502 names were retained on the director's list of producers; and the remainder of the 3,500 names were removed from the list. After this removal and further corrections on account of duplications, the director's final list of producers contained 6,075 names.

Some of the members of the Department of Agriculture who participated in the decision to send the December 10th letter testified that the thousand-pounds-or-less category was selected because this amount is the average production of four avocado trees; this number of trees would cover the average "back-yard grower"; at the prevailing price a thousand pounds of avocados was worth between $40 and $50; the

---

developing a list of persons who are engaged in the business of producing avocados for market in California.

"Your name has been reported to us as a producer of avocados together with the quantity purchased from you for the preceding marketing season. The quantity reported as having been purchased from you is less than a thousand pounds. This leads us to question whether you are *engaged in the business* of producing avocados for market. On the basis of the quantity reported for you, it appears that you may not be engaged in the business of producing avocados and, therefore, would not qualify as a producer under the California Marketing Act. Consequently, unless we hear from you advising that you are engaged in the business of producing avocados, by not later than December 24, 1959, we will remove your name from the official list of producers. A form is enclosed for your use."

The enclosed form read:

"I .............................., ............................
         Name — Print             Address

have ................ trees, .....................years of age
      Number             Number

in commercial production and wish to have my name retained upon the official list of avocado producers in connection with procedures taken in the formulation of a Marketing Order for the Promotion of California avocados.

............................
           Signature"

federal census definition of a farmer is a person who sold a minimum of $250 worth of produce or the produce from 10 acres; and the 3,500 persons in the thousand-pounds-or-less category whose names appeared on the original list marketed an average of 438 pounds for a return of $21.90.

On December 10, 1959, being the date when the "thousand-pound" letter was mailed, a tally of the returns showed that assents to the marketing order had been received from 34.07 per cent of the 9,437 persons then on the director's list of producers, representing 58.50 per cent of the volume. On February 15, 1960, a final tally was made which showed that assents to the marketing order had been received from 55.34 per cent of the 6,075 persons finally included on the director's list, representing 70.99 per cent of the volume. Thereupon the director declared the marketing order effective.

### Definition of "Producers"

A consideration of the purposes of the act, the legislative declaration of policy in connection therewith, other provisions thereof, and the language of the statutory definition sustains the position of the director that a producer is a person engaged in the business of producing or in the business of causing the production of avocados for market. The contention of the plaintiffs that a producer may be either (1) a person engaged in the business of producing avocados, or (2) a person causing the production of avocados regardless of whether he is or is not in the business of doing so, and that therefore, the term "producers" includes all persons growing avocados for the market, relies upon a strained construction of the language used in the statute. As heretofore noted, the code section in question defines a producer as "any person engaged within this State in the business of producing, or causing to be produced for market, any agricultural commodity as herein defined." (Agr. Code, § 1300.12, subd. (d).) To accept the interpretation relied upon by the plaintiffs it is necessary to conclude that a person engaged in the business of producing avocados is a "producer" within the meaning of the statute providing he is so engaged in the State of California, but that a person who causes avocados to be produced for market is a "producer" whether he does so in the State of California or outside of the State of California. Clearly, this is not the intent of the act which is concerned with "California grown agricultural commodities." (Agr. Code, § 1300.10, subd. (a).) If the modifying phrase "within this

State,'' which is used in the statutory definition, relates to the activities of all persons referred to therein, the plaintiffs' interpretation would be based on a distorted paraphrasing of the statute, i.e., '' '[p]roducer' means any person engaged within this State . . . causing to be produced for market, any agricultural commodity as herein defined.'' Under the plaintiffs' interpretation, the act would not apply to a person who *produces* avocados unless he is engaged in the business of doing so, but would apply to a person who *causes the production* of avocados, regardless of whether or not he is engaged in the business of doing so. No apparent reason exists for this distinction.

Section 1300.10 of the Agricultural Code indicates the Legislature's concern about the purchasing power of the producers of agricultural commodities; states that such purchasing power is ''low in relation to that of persons engaged in other gainful occupations''; notes that such producers ''are thereby prevented from maintaining a proper standard of living and from contributing their fair share to the support of the necessary governmental and educational functions''; and declares a policy ''to aid agricultural producers in restoring and maintaining their purchasing power at a more adequate, equitable and reasonable level.'' The succeeding section of that code (Agr. Code, § 1300.11) expressly declares that one of the purposes of the act is ''To restore and maintain adequate purchasing power for the agricultural producers of this State.'' (Subd. (f).) These provisions obviously refer to persons whose livelihood and consequent standard of living are directly related to their activities in connection with the production of agricultural commodities. Such persons are engaged in the business of producing agricultural commodities. Whether their activities constitute the actual production or constitute the causing of production are not factors which captured the attention of the Legislature. Within the realm under consideration, i.e., agricultural production, it was the extent of the activity of the persons engaged, i.e., as a business, and not the type of that activity, i.e., as producing or causing the production, which was the subject of governmental concern.

The term ''business'' is defined generally as '' 'that which occupies the time, attention, and labor of men for purposes of livelihood or for profit; a calling for the purpose of a livelihood.' '' (*City of Los Angeles* v. *Cohen,* 124 Cal.App.

2d 225, 228 [268 P.2d 183]; *Cuzner* v. *California Club,* 155 Cal. 303, 311 [100 P. 868, 20 L.R.A. N.S. 1095]; *Matter of Application of Smith,* 33 Cal.App. 161, 163 [164 P. 618]; *Semple* v. *Schwarz,* 130 Mo.App. 65 [109 S.W. 633, 636]; *Wilson* v. *Federal Tax Co.,* 176 Okla. 90 [54 P.2d 363, 367]; *People* ex rel. *Tobacco & Allied Stocks, Inc.* v. *Graves,* 250 App.Div. 149 [294 N.Y.Supp. 995, 999].) ▮▮▮ To constitute business it is not necessary that the activity under consideration be the sole means of livelihood of the person engaged therein. On the other hand, not every activity resulting in a contribution to a person's livelihood constitutes business; where the contribution is slight and the activity is a mere incident to the primary use of his property he is not thus engaged in business. (*Kaslovitz* v. *Reid,* 128 F.2d 1017, 1018; *Simons* v. *Lovell,* 7 Heisk. (Tenn.) 510, 515; *cf. Cuzner* v. *California Club, supra,* 155 Cal. 303, 309-315.)

▮▮▮ It is reasonable to conclude that the Marketing Act under consideration was intended to assist those who were occupied in the production of avocados for the purpose of making a substantial contribution to their livelihood; that such persons would be engaged in the business of producing avocados; that persons not so engaged, even though their incidental activities resulted in the production of avocados, were not the intended beneficiaries of the act; and that these incidental activities were not the intended subjects of regulation by the act.

It is noteworthy that before issuing a marketing order the director is required to find that the proposed order will tend to reestablish or maintain a price level such as will provide a purchasing power for the subject commodity "which is adequate to maintain in the *business* of producing such agricultural commodity such number of producers as is required to provide such supply of the quantities and qualities of such agricultural commodity as is necessary to fulfill the normal requirements of consumers thereof." (Agr. Code, § 1300.14, subd. (a)(1).) (Emphasis added.) If the plaintiffs' interpretation of the term "producers" is used in applying the foregoing code provisions, the object thereof would be to maintain "in the *business* of producing" the subject commodity such number of persons, who either are engaged in the *business* of producing that commodity or who produce such commodity even though they are not engaged in the business of doing so, as is necessary to supply the needs of consumers. (Emphasis

added.) The interpretation of the statute which requires that there be maintained in a business persons who are not engaged in such business involves an inconsistency demonstrating the error of such interpretation.

The conclusion of the trial court that, "The definition of a producer of avocados includes both persons engaged in the business of producing avocados and persons who caused to be produced for market quantities of avocados" was erroneous.

### Preparation of Producers List

The plaintiffs also contend that in preparing the final list of producers upon which he based his finding that the requisite assents had been given to the proposed marketing order, the director did not follow the procedure prescribed by the statute; that the list prepared from the reports furnished by the handlers was the true final list; that the use of the thousand-pound letter involved an arbitrary method of determination not contemplated by the statute; that in striking the names of approximately 2,900 avocado growers from the producers' list originally compiled, the director acted arbitrarily; and, therefore, the judgment of the trial court enjoining enforcement of the marketing order was proper.

Section 1300.13, subdivision (d)(3) of the Agricultural Code requires the director to prepare a list of producers from the reports filed with him by the handlers and from information otherwise available to him, "including any proper corrections." One source of such information is the testimony and evidence which the director is required to receive at the time of the public hearing, which precedes the issuance of the proposed marketing order, with respect to the sufficiency of the lists on file with him at that time. (Agr. Code, § 1300.13, subd. (c)(4).) However, the statute clearly indicates that this is not the sole source of such information. The method of developing other sources and obtaining additional information is a matter which lies within the discretion of the director. (*Dickey* v. *Raisin Proration Zone No. 1,* 24 Cal.2d 796, 809-811 [151 P.2d 505, 157 A.L.R. 324]; *California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 302-303 [140 P.2d 657, 147 A.L.R. 1028]; see *Highland Farms Dairy* v. *Agnew,* 16 F.Supp. 575, 586.) ■■■ Unless the method adopted is so unreasonable as to constitute arbitrary or capricious action the determination by the director in the selection thereof is final. (*Rible* v. *Hughes,* 24 Cal.2d 437, 445 [150 P.2d 455, 154 A.L.R. 137]; *Ray* v. *Parker,* 15 Cal.2d 275, 311 [101 P.2d

665]; *Gabrielli* v. *Knickerbocker,* 12 Cal.2d 85, 92 [82 P.2d 391]; *Monahan* v. *Department of Water & Power,* 48 Cal. App.2d 746, 753 [120 P.2d 730].)

The contention of the plaintiffs that the list compiled from the reports filed by the handlers, subject only to corrections based on evidence and testimony received at the public hearing, requires an assumed intention by the Legislature to vest in the handlers the authority to determine whether their customers are engaged in the business of producing avocados rather than to vest such authority in its agent, the Director of Agriculture. The indulgence in such an assumption is unreasonable.

In the instant case, the director had information which led him to believe that persons not actually engaged in the business of producing avocados nevertheless appeared as producers on the reports submitted to him by the handlers; that the avocados which they marketed came from a few trees grown at their place of residence; that the value thereof was small; and that the returns therefrom were not likely to constitute a substantial part of their livelihood. In the light of this information the director determined that the status of those growers listed in the reports of the handlers as producers but who marketed only a small volume of fruit should be the subject of further inquiry; that the expense involved in a person to person investigation was prohibitive; and that an appropriate method for obtaining further information would be through a letter directed to the grower and the reply made by him, expressed either in a return letter or by his action in making no answer to the inquiry. This method simulated that provided by the statute for determining the extent of producer assent to a proposed marketing order. The selection of the subjects of this inquiry from those who marketed a thousand pounds or less was based on the reasons heretofore noted, i.e., that this amount of avocados ordinarily would be produced by four trees or less; would return $50 or less; and, from the experience of the director, would be grown on a homeowner's lot, not as a business, but as an incident to the use of his property as a dwelling. The action of the director in concluding that his original list of producers contained the names of persons who were not in the business of producing avocados and should be corrected; in selecting a letter of inquiry and a method of reply as the means of further investigation; in choosing the subjects of his further investigation

from the thousand-pounds-or-less category; and in correcting his lists in accordance with his subsequent findings, was not arbitrary or capricious and constituted a valid discharge of the duties imposed upon him by statute.

The plaintiffs claim that the selection of the thousand-pounds-or-less category was capricious and arbitrary because it made a distinction without reason between the grower who raised 1,000 pounds and the grower who raised 1,001 pounds. The object of the further inquiry was to ascertain whether growers listed as producers actually were engaged in the business of producing. Obviously, to attain this objective it was not necessary to canvass all of the persons whose names appeared on the original list. Where the line should be drawn between investigation and noninvestigation was a proper subject of discretion; the determination made is supported by appropriate reasons; and no fine measure of distinction should be applied to this type of administrative action. (*Cf. Weiss* v. *State Board of Equalization,* 40 Cal.2d 772, 777 [256 P.2d 1]; *Ferrante* v. *Fish & Game Commission,* 29 Cal.2d 365, 371-374 [175 P.2d 222]; *Torres* v. *Department of Alcoholic Beverage Control,* 192 Cal.App.2d 541, 550 [13 Cal.Rptr. 531].) Furthermore, the plaintiffs' complaint is not directed to the inclusion of growers in the list of producers but to the exclusion of growers therefrom; all growers marketing more than one thousand pounds were included in the list; not all growers in the thousand-pounds-or-less category were excluded; the latter merely were the subject of further investigation; and the manner of investigation and the method of investigation were not unreasonable.

The plaintiffs also claim that the director permitted each grower in the thousand-pounds-or-less category to determine for himself whether he was in the business of producing avocados; that such a conclusion results from the type of investigation made, i.e., a letter of inquiry with a formulated yes or no reply; and that such a procedure constituted capricious and arbitrary action. Preliminary to his decision to circularize growers in the thousand-pounds-or-less category, the director had concluded, from his experience and the information coming to him through various sources, that many persons who marketed small quantities of avocados were not engaged in the business of producing avocados; that these persons were the so-called back-yard growers who had four trees or less; that the average production of four trees or less was a thousand pounds or less; that the average return from

such a production was $50 or less; that such a production and such a return ordinarily were not the result of a business activity; that the average production and return per person of all of those in the thousand-pounds-or-less category was 438 pounds and $21.90 respectively; and although the number of persons in this category represented 33⅓ per cent of those on the original list, the volume marketed by them constituted less than 1½ per cent of the total market volume. Under these circumstances, the inquiry letter, its form enclosure, and the adopted method of response constituted only a step in the process of preparing a list of producers, and the fact that the grower was permitted to express his opinion with respect to his status was not unreasonable; did not constitute a determination of his status; and did not render the total process arbitrary and capricious.

Complaint also is directed to the fact that the list in its final form was not prepared until a considerable time after the public hearing at which interested persons were entitled to give "testimony and evidence with respect to the accuracy and sufficiency of the lists on file with the director" (Agr. Code, § 1300.13, subd. (c)(4)); that in the meantime the assent forms had been mailed to those on the original list; that some of these forms had been returned; and that some of them who assented might not have done so if they had been informed that the "back-yard growers" were to be excluded from the program. As heretofore noted, the statute does not specify the time within which the director is to complete the list upon which he will act; but does indicate that corrections may be made after the public hearing; and vests in the director the authority to select the sources of information upon which to base such corrections. (See *Ray* v. *Parker, supra,* 15 Cal.2d 275, 306-308.) Although the statute prescribes a public hearing at which, among other things, testimony and evidence respecting the sufficiency of the producer lists on file with the director may be received, this hearing is of that type which now customarily precedes legislative action; is a step in the process of legislation; is quasi legislative in character; and is not the sole source of information upon which the statutorily prescribed administrative action may be based. (*Ray* v. *Parker, supra,* 15 Cal.2d 275, 304-307; *Brock* v. *Superior Court, supra,* 109 Cal.App.2d 594, 605-606.) The Legislature prescribed the method of procedure followed by the director. No constitutional question is involved. If that procedure is unfair the Legislature and not the court is the

forum for complaint. In a similar vein, the plaintiffs claim that the procedure followed by the director was illegal because his representative at the public hearing indicated that volume was not the decisive factor in determining whether a person was or was not a producer, whereas a contrary concept was followed in preparing the final list. The director contends that volume alone was not the determinative factor in making the final list, as evidenced by the fact that some of the growers in the thousand-pounds-or-less category were included thereon. The action objected to is not set up as an estoppel. Rather, it is contended that the alleged change in position constitutes arbitrary and capricious action which infests the total procedure and renders it invalid. The contention is without merit. Whatever may have been the position of the director at the time of the public hearing, he was required to conform his lists to the law. If at the time of the hearing he had an incorrect concept of the law or incorrectly interpreted the facts, his action in reversing his position to conform to the law or a proper interpretation of the facts was not arbitrary or capricious.

It also is contended that the director's action in revising the original lists was motivated by pressure exerted by the Avocado Promotion Committee. Submission to this pressure, it is argued, constituted arbitrary and capricious action which invalidated the subsequent proceeding. Whatever may have instigated the investigation leading to the revision of the original lists is of no consequence under the circumstances in this case, because the action of the director which followed was within the confines of the procedure outlined by the statute and was not arbitrary or capricious. The motive which prompted this action would not affect its established nature.

The director was required to prepare a list of producers, i.e., persons engaged in the business of producing or causing the production of avocados. He prepared such a list. The evidence establishes that in doing so he conformed to the procedure prescribed by the statute. His action was administrative in character. The legislative standard given him to guide his action was adequate (*Holloway* v. *Purcell*, 35 Cal.2d 220, 231 [217 P.2d 665]; *Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal.2d 620, 641-645, 650, 652-656 [91 P.2d 577]), although, as in most instances, this standard was defined in general terms, i.e., to prepare a list of persons engaged in the business of producing or causing the production of avocados.

In some particulars the procedural steps incident to the preparation of this list were outlined, i.e., the giving of notice to handlers, the receipt of reports from them, conducting a public hearing, and receiving evidence, but in other particulars the procedural steps were a subject for administrative action, i.e., the manner of correcting the lists on file, a determination respecting the need for further investigation, including the selection of additional sources of information and the method of producing that information. His ultimate decision, evolving from a procedure prescribed by law and not being the result of arbitrary or capricious action, was the product of an exercise of discretion in a legislative matter which is not subject to judicial review. (*Rible* v. *Hughes, supra,* 24 Cal.2d 437, 445; *Ray* v. *Parker, supra,* 15 Cal.2d 275, 307-308, 310-311; *Cranford* v. *Jordan,* 7 Cal.2d 465, 467 [61 P.2d 45]; *Vita-Pharmacals, Inc.* v. *Board of Pharmacy,* 110 Cal.App.2d 826, 832 [243 P.2d 890]; *Monahan* v. *Department of Water & Power, supra,* 48 Cal.App.2d 746, 753.)

In arriving at this conclusion we have not considered the argument advanced in support of the director's position based on the provisions of the act that the producer lists prepared by him "shall constitute complete and conclusive lists for use in any finding made by the director pursuant to the provisions of Section 1300.16(a)[3] hereof and such findings shall be conclusive." (Agr. Code, § 1300.13, subd. (d)(3).) Whether these provisions remove all justiciable issues from the proceeding under review, in the light of the decision in *People* v. *Chevalier,* 52 Cal.2d 299, 307 [340 P.2d 598], is a question deserving serious consideration, but a determination with respect thereto is not necessary to the decision in this case.

The judgment is reversed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied August 29, 1961, and respondents' petition for a hearing by the Supreme Court was denied October 4, 1961.

---

[3]Section 1300.16, subdivision (a) provides that no marketing order shall become effective until the director finds that a prerequisite percentage of producers have assented to the order.