[Civ. No. 66576. Second Dist., Div. Two. Apr. 7, 1983.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
OLSON FARMS, INC., Defendant and Appellant.

COUNSEL

Jonathan M. Berge for Defendant and Appellant.

Ira Reiner, City Attorney, Thomas C. Bonaventura and Ronald A. Tuller, Assistant City Attorneys, for Plaintiff and Respondent.

OPINION

GATES, J.—Defendant Olson Farms, Inc., appeals from the judgment upholding the respondent City of Los Angeles' determination that defendant had underpaid its business taxes for the years 1974, 1975, 1976, and 1977, in the total sum of $381.81. The matter having been submitted upon an agreed statement there is no dispute as to the facts. These include the following:

"During the entire period of 1974 through 1978, inclusive, defendant maintained its corporate headquarters within the City of Los Angeles.

"During each of the years 1974 through 1978, inclusive, defendant engaged in the business of selling eggs at wholesale within the City of Los Angeles.

"During each of the years 1974 through 1978, inclusive, defendant had interest income which was derived exclusively from its subsidiary corporations in an amount equal to the amount of interest expense incurred by defendant. The reason that the interest income was equal to the interest expense was that defendant did not have excess cash on hand from which to make loans, as necessary, to its subsidiary corporations. Rather, defendant borrowed from its principal bank according to its subsidiaries' needs and charged the same interest rate as charged by the bank. All repayments by subsidiaries were used by defendant to immediately repay the bank.

"For the tax years 1976 through 1978, inclusive, defendant reported gross receipts from selling goods, wares or merchandise at wholesale and paid tax

thereon at the rate of $1.00 per $1,000.00 of gross receipts or fractional part thereof pursuant to Los Angeles Municipal Code Section 21.166, but did not report any gross receipts from interest income and did not pay any tax attributable thereto.

"During the calendar years 1974 through 1977, inclusive, defendant had interest income in the following amounts:

| Year | Gross Receipts |
|------|----------------|
| 1974 | $300,399 |
| 1975 | 217,518 |
| 1976 | 155,597 |
| 1977 | 53,862 |

"Pursuant to an audit of defendant's business records plaintiff's City Clerk included interest income in gross receipts and determined that defendant had underpaid its business taxes for tax years 1975 through 1978, inclusive, by the total amount of $582.78.

"On January 19, 1979, plaintiff's City Clerk levied, and sent notice of, an assessment against defendant for business taxes for 1975, 1976, 1977 and 1978, which included principal and interest in the total sum of $721.09, based upon the difference between the amount of tax paid by defendant and the amount determined by plaintiff's City Clerk to be owing. A true and correct copy of said notice of assessment is attached hereto, marked Exhibit 'A' and incorporated herein by this reference.

"On February 7, 1979 defendant paid to plaintiff $200.97 in payment of all portions of said assessment other than the tax attributable to interest income.

"On April 3, 1979 a hearing on said assessment was held before a Board of Review, composed of representatives of plaintiff's City Attorney, Controller and City Clerk, and on June 12, 1979 said Board of Review made its decision affirming said assessment except for giving credit for the payment of $200.97 made by defendant. . . ."

On the basis of the foregoing facts, the trial court made the following express conclusions:

"1. Defendant is subject to tax under Los Angeles Municipal Code Section 21.108 and 21.166 for having engaged in the business of lending money to its subsidiary corporations.

"2. The amount of interest income received from said subsidiary corporations constitutes taxable gross receipts under said Section 21.166.

"3. The assessment of January 19, 1979 was properly levied by plaintiff's City Clerk against defendant.

"4. The decision of the Board of Review regarding said assessment was correct and proper.

"5. The amount of business tax now due and owing from defendant to plaintiff under the provisions of the Los Angeles Municipal Code is as follows:

| Principal | Interest | Penalty | Total |
|-----------|----------|---------|-------|
| $381.81 | $234.21 | $38.18 | $654.20 |

"6. That plaintiff have judgment against defendant in the sum of $654.20, together with interest on the sum of $381.81 at the rate of three-quarters of one percent per month, being $2.86 per month, from October 1981 until judgment is entered herein, together with its cost of suit herein."

Defendant urges that although its owners have elected, presumably for sound financial reasons, to conduct their business activities by means of entirely separate and distinct legal entities, nonetheless, and despite the clear provisions of section 21.108 of the Los Angeles Municipal Code, it should be allowed to cast aside all their corporate veils in this instance. We cannot agree.

Subsection (a) of section 21.108 provides that the city license fee for "each person engaged in the business of lending money, advancing credit, or lending credit or arranging for the loan of money or advancing of credit or lending of credit for and on his own behalf or on behalf of any other person as principal, agent or broker . . . shall be $750." However, subsection (c) thereof permits a person so engaged to avoid the payment of such tax if, during his conduct of another business, his lending, or credit arranging activities are carried on "solely with customers or suppliers of that other business" or "persons who either stand in the relation of parent or subsidiary to him, or are so constituted as to have substantially common ownership with him." In these latter instances, if the license tax for the person's other business is "measured by gross receipts, all interest and other charges received as a result of the activity described in subsection (a) shall be included in the gross receipts by which the tax elsewhere imposed by this Article is measured . . . ."

For this reason during the four years appellant was lending money or otherwise arranging credit for its subsidiaries it was charged only $381.81 rather than the $3,000 that would have otherwise been due if it had so conducted itself

with strangers who were neither customers, suppliers, nor related to it by a common ownership.

Nonetheless, appellant urges, in essence, that we should declare section 21.108 completely void as to it, and presumably all other business entities in the city who engage in any similar lending or credit arranging activities, so long as such activities are (1) made in a profitless manner, and (2) restricted to borrowers who share common ownership. It bases this argument on the semantic proposition that since it was not directly profiting from its lending activities, a fact that in these difficult economic times is also true of a number of banks and savings and loans, it should not be deemed to be "engaged in the *business* of lending money." (§ 21.108; italics added.) However, unlike the considerations underlying the income tax, profit or loss play no role in the determination of a licensing tax, whether the latter be computed upon "gross receipts," "interest or other charges," or simply set at a fixed flat fee.

Identical arguments were rejected in *Rexall Drug Co.* v. *Peterson* (1952) 113 Cal.App.2d 528 [248 P.2d 433], and *City of Los Angeles* v. *Clinton Merchandising Corp.* (1962) 58 Cal.2d 675 [25 Cal.Rptr. 859, 375 P.2d 851]. In *Rexall,* a drug company was providing "accounting, financial, personnel, legal, executive managerial, and directive services to its subsidiaries" charging each of them "its proportionate cost thereof" but without profit. (*Rexall,* p. 529.) The court held that such activities, nonetheless, brought Rexall's activity within catchall section 21.190 of the code observing:

"While in exceptional cases, to prevent fraud or injustice, the law will look through what has been termed the corporate veil [citation], in tax matters a corporation and its stockholders are deemed separate entities. [Citation.] Ownership of capital stock in one corporation by another does not itself create identity of corporate interest as between the two. [Citation.] To do otherwise would lead to endless confusion and trouble in the imposition of taxes.

"Bearing in mind that each of Rexall's subsidiary corporations is an independent legal entity, it becomes manifest that the transactions here in question were subject to business license tax by the city." (113 Cal.App.2d at p. 530.)

In *City of Los Angeles* v. *Clinton Merchandising Corp., supra,* 58 Cal.2d 675, Clinton was an affiliate of various sales corporations to whom it both (1) supplied merchandise, and (2) acted "as the central managing, accounting and disbursing office for these stores." (P. 677.) Our Supreme Court adhered to the *Rexall* approach, and held that the first activities constituted "sales" for which a "gross receipts" tax under section 21.166 must be paid and that *"the distribution of merchandise 'at cost,'* rather than upon a profit-making mark-up [did not] change the situation." (P. 680; italics added.)

As to the second aspect of Clinton's operation, the court also adopted the *Rexall* rationale, although pointing out that under the measuring standard set forth in section 21.190, as opposed to that in section 21.166, Clinton's "gross receipts" were to be determined by the charges made therefor, not by the amount of the reimbursement payments it chanced to make on behalf of its affiliates. However, the court did not suggest, as appellant urges, that if Clinton had made no "profitmaking" charges for even these latter services it could have avoided payment of all appropriate licensing fees therefor. In any event, we are not here faced with this question.

The instant situation does not involve catchall section 21.190, nor an unknown or undefined methodology for computing the basis for the prescribed license tax. Here, appellant supplied its subsidiaries with specific items, i.e., sums of money. Just as the clothing supplied by Clinton to its affiliates resulted in the imposition of a gross receipts tax measured in accordance with section 21.166, so the monies supplied by appellant created a similar tax measurable in accordance with section 21.108, i.e., upon the "interest" charged therefor. In each instance, of course, it is immaterial whether or not a profit resulted to the supplying corporation. Therefore, the fact the monies appellant lent its subsidiaries in this instance were derived from outside sources is equally irrelevant.

We assume that from a bookkeeping point of view, appellant's practice of lending its subsidiaries money at the same interest rates it paid therefor, constituted an immediate paper "loss" by reason of the man hours expended by its employees in such a "profitless" function. Presumably, however, the overall operation of both parent and subsidiaries benefited thereby.

Nonetheless, in its reply brief appellant suggests that in the future it may seek to avoid even the most nominal tax consequences of its present financial arrangement by having each of its subsidiaries deal directly with the lending institutions with appellant merely acting as their guarantor. We express no opinion as to whether or not such modified activity would remove appellant from the broad reach of section 21.108. We need merely note that if appellant finds it advantageous to conduct its operations in a fashion that does bring it outside this section, it is certainly free to do so. However, what it, and the innumerable other companies operating in Los Angeles through complex interlocking parent and subsidiary corporations, may not do, is require the city to expend the time of its limited personnel investigating their infinite variety in an effort to determine whether or not, "form should prevail over substance" in a given instance. Legal entities are not such ephemeral creatures that they may be made to appear and disappear as best suits a taxpayer's passing desires.

The judgment is affirmed.

Roth, P. J., concurred.

**BEACH, J.**—I dissent.

The majority makes the same error made by the trial court and the city review board. They all assume without authority, explanation or reference to specific definitions in any part of the city ordinance, any statute or decision that appellant Olson Farms (Olson) is "engaged in the business" of lending money. Clear and solid demonstration of this basic fact is an absolute prerequisite to the imposition of the tax under Los Angeles Municipal Code section 21.108.[1] Olson is not seeking an exemption from the tax. Rather, the City of Los Angeles is seeking to apply the tax to one who is not clearly in the money-lending business. Accordingly, the burden is on the City of Los Angeles to demonstrate that the operative facts making applicable section 21.108 of its tax ordinance are clear, unambiguous and unequivocal. (*County of Los Angeles* v. *Jones* (1939) 13 Cal.2d 554 [90 P.2d 802].) The record before us does not demonstrate that to be the case.

Section 21.108, subsection (c) under which the city seeks to tax Olson requires at least three essential parts for its application. They are: (1) being "engaged in the business" of lending money (2) to a subsidiary and (3) dealing confined to the subsidiary.

Parts (2) and (3) above are stipulated facts. But part (1) is not. The loan of money to the subsidiaries was an activity by Olson with its subsidiaries. But an activity is not necessarily a business. Although the activity is done as part of another business, it still does not make Olson "engaged in the business" of lending money. Olson is in the wholesale egg-selling business. It paid the legitimate tax on its wholesale sale of eggs under the gross receipts tax. (§ 21.166.) No one, the city review board, the trial court or the majority opinion, explains clearly how the bare fact of an incidental activity with its subsidiary justifies the conclusion that it is thereby proven or established as a matter of law that Olson was also "engaged in the business" of lending money.

The majority discounts as a test the use of the fact that no profit was made. By doing so it also diminishes the fact that the purpose of engaging in a business is to make a profit. Thus the majority equally rejects as irrelevant, the helpful guide of considering the purpose of Olson's activity. That purpose was accom-

---

[1]All references to "section" followed by number are to Los Angeles Municipal Code sections.

modation to another rather than becoming a money lender.[2] I respectfully suggest that in this regard the majority errs.

Although profitmaking or receipt of other benefit or advantage may not be the sole determining factor or even in combination with other elements the most important, yet it is nonetheless more important than the majority allows. Courts in other cases defining the terms "being in business" or "business" have used the "profit" test primarily, if not exclusively, e.g., *City of Los Angeles* v. *Cohen* (1954) 124 Cal.App.2d 225 [268 P.2d 183]; other cases, for example, allude to profit-making as a secondary aid or construe other benefits as equivalent to taxable "profit," *Union League Club* v. *Johnson* (1941) 18 Cal.2d 275 [115 P.2d 425]; or distinguish mere "incidental activity" from "profitmaking activity," *Child* v. *Warne* (1961) 194 Cal.App.2d 623 [15 Cal.Rptr. 437]; *City of Los Angeles* v. *Clinton Merchandising Corp.* (1962) 58 Cal.2d 675 [25 Cal.Rptr. 859, 375 P.2d 851].

Subsection (c) of section 21.108 provides that "all *interest* and *other charges* received as a result of the *activity described in subsection (a)* shall be included in the gross receipts . . ." (to be taxed under § 21.166). There are two significant features in this phrase: (1) the activity described refers to subsection (a). There, the imposition of the tax is described as applicable not in terms of persons who engage in an "activity" but expressly to persons "engaged in the business." As explained, that feature is a predicate, not here demonstrated present, to the section's application. We lack fact applied to clear authority. (2) Olson did not make a charge for its services nor did it retain the interest collected but merely handled it by passing it on in full to the bank. The collecting and handling of money, which is not a charge for interest nor received for any other services even though it results from the activity of aiding its subsidiaries, is not necessarily "business" income or receipt gross or otherwise. (*City of Los Angeles* v. *Clinton Merchandising Corp., supra,* 58 Cal.2d 675.) It is not received from "being engaged in the business."

I would reverse the judgment.

---

[2]The ordinance lists the taxable businesses and the form of tax applicable to them by the nature of the business. Section 21.108 is entitled "MONEY LENDERS," and is located between the provisions applicable to "LAUNDRY, CLEANING, DYEING," etc. (§ 21.102) and "CASHING CHECKS" (§ 21.108.1) businesses.