[L. A. No. 26255. In Bank. Nov. 9, 1962.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v. CLINTON MERCHANDISING CORPORATION, Defendant and Appellant.

Shearer & Fields, Bertram Fields and Bernard Shearer for Defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, and Robert C. Summers, Deputy City Attorney, for Plaintiff and Respondent.

TOBRINER, J.—This case involves the narrow question of whether the City of Los Angeles in assessing defendant's license taxes properly interpreted the term "gross receipts" to cover all of the amounts defendant handled rather than the gross amount it received for the services it rendered. The case presents the further question of whether the city properly assessed defendant as a "person . . . selling . . . goods . . . at wholesale." For the reasons hereinafter set out we believe the city properly assessed the tax in the second, but not in the first, instance.

Defendant appeals from a judgment sustaining the assessments in both respects for the years 1955 through 1958. The city measured the assessments by "gross receipts" under three separate sections of the Los Angeles Municipal Code: (1) $40.20 under section 21.167, based on gross receipts from defendant's retail sales of merchandise to its employees; (2) $8,840.18 under section 21.166, based on gross receipts from defendant's wholesale merchandising; and (3) $3,392.84 under section 21.190, based on gross receipts for services rendered by defendant exclusive of sales activities. Defendant does not contest the retail sales assessment (§ 21.167) but does challenge the propriety of the other two assessments.

As the stipulation of the parties discloses, defendant Clinton Merchandising Corporation is an affiliate of various sales corporations (hereinafter referred to as stores) engaged in the retail men's clothing business. It acts as the central managing, accounting and disbursing office for these stores. It collects all of their receipts and pays all of their obligations. It advances money when necessary to pay the obligations of any store which has receipts insufficient to cover its obligations. It renders various advisory services to the stores, including assistance in their advertising programs.

Defendant negotiates in the East for the purchase of all merchandise to be sold by the stores. It buys such merchandise with its own funds. In some cases the manufacturers ship the merchandise directly to the stores; in most cases they ship it to defendant's warehouse. Here it is stored and later distributed at cost to the stores. Defendant carries on its books as its own inventory all merchandise remaining in its warehouse at the end of an accounting period. Defendant makes occasional sales from such merchandise both at wholesale and retail to its own employees. As we have stated, the tax imposed

on gross receipts from these sales, pursuant to section 21.167, is not disputed by defendant.

Defendant sets up a procedure for the financing of the stores and for the payment of its fees. Thus defendant allocates to a particular store, and enters on its books as "advances," all monies paid by it for the store's payroll, advertising and distributed merchandise. Defendant itself collects the store's receipts; it enters these as "repayment of advances." Other cost items, such as television advertising, defendant adjusts among the stores on a pro rata basis, measured by the ratio of the store's sales to the total sales of all stores in the area. As compensation for its services defendant deducts and retains a percentage fee, varying between 5 and 6 per cent, of the store's sales. From this amount defendant pays its own costs of operation.

Pursuant to section 21.166, the city assessed its tax upon the basis of receipts from wholesale sales; defendant, however, contends it has not operated as a wholesaler but as a broker and therefore should have been taxed only under the more lenient section 21.79. Under section 21.190, defendant paid a tax based upon the retained percentage of 5 or 6 per cent, which it treated as its gross receipts. The city, however, contends that the total amount of defendant's receipts, including the repayment of advances, are its gross receipts.

We therefore deal with two problems posed by the sections. The first turns essentially upon the status of the payee; the second, upon the amount of the tax. As to the first issue, we believe that the trial court properly held that defendant engaged in the business of selling goods at wholesale and that the city, accordingly, correctly taxed it under section 21.166. As to the second problem, we have concluded that the defendant should not have been taxed upon the basis that its gross receipts embraced the entire amount which it collected from its affiliate stores rather than the amount which it received in payment for its services. To this extent the judgment under section 21.190 cannot stand.

▮▮▮ Turning to the first issue, we find that the operation of defendant coincides with that of a wholesaler as contemplated by section 21.166.[1] Subdivision (a) of that section en-

---

[1] Section 21.166 of the Los Angeles Municipal Code reads in part as follows: "(a) Every person . . . selling any goods, wares or merchandise *at wholesale*, and not otherwise specifically taxed by other provisions of this Article, shall pay for each calendar year or portion thereof the

compasses "[e]very person . . . selling any goods" etc.; sub-division (b)[2] defines a wholesale sale as a "sale of goods . . . for the purpose of resale in the regular course of business"; section 21.00, subdivision (a)[3] specifies "gross receipts" as the total amount "received for the performance of any act, service or employment . . . in connection with the sale of goods . . ."; section 21.00, subdivision (g)[4] provides that "[s]ale . . . shall be deemed to include . . . the making of any transfer of title. . . ." Here defendant uses its own funds to purchase the merchandise. It stores the shipped merchandise in its ware-houses. It inventories the merchandise as its own. It takes title to the merchandise. Upon distribution of the merchandise to the particular store, defendant transfers title to that store. The recipient receives possession of the merchandise and title to it for the purpose of resale. The operation thus fulfills the statutory qualifications for that of a wholesaler.

Defendant's various attempts to convert its defined status into other classifications by describing aspects of the operation in unusual descriptive terminology must fail. Thus it claims that it charges the store which receives the merchandise for "advances" and takes as "repayment of advances" that portion of the receipts which is attributable to such merchan-dise. The use of unique nomenclature to describe the trans-

---

sum of $8.00 for the first $20,000 or less of gross receipts, and, in addition thereto, the sum of 40 cents per year for each additional $1,000 of gross receipts or fractional part thereof in excess of $20,000. . . ." (Italics added.)

[2]Section 21.166(b) reads: "For the purpose of this section, a *whole-sale* or *sale at wholesale* means a sale of goods, wares or merchandise for the purpose of resale in the regular course of business." (Italics added.)

[3]Section 21.00, subdivision (a) of the code defines gross receipts as "The total amount of the sale price of all sales, the total amount charged or received for the performance of any act, service or employ-ment of whatever nature it may be, *whether such service, act or employ-ment is done as a part of or in connection with the sale of goods, wares, merchandise or not*, for which a charge is made or credit allowed, in-cluding all receipts, cash, credits and property of any kind or nature, any amount for which credit is allowed by the seller to the purchaser without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service costs, interest paid or payable, losses or any other expense whatsoever; . . ." (Italics added.)

[4]Section 21.00, subdivision (g) provides that a "[s]ale . . . shall be deemed to include . . . the making of any transfer of title, in any manner or by any means whatsoever, to tangible personal property for a price, and to the serving, supplying or furnishing, for a price, of any tangible personal property fabricated or made at the special order of consumers who do or who do not furnish directly or indirectly the specifications therefor."

action, the wrapping of it in the designation of "advance," does not alter the nature of it. Nor does the distribution of the merchandise "at cost," rather than upon a profit-making mark-up, change the situation. Defendant's different labels do not effectuate new or different transactions.

Defendant's attempt to designate its status as that of a broker under section 21.79 likewise fails. Defendant's transactions in arranging for the purchase and delivery of merchandise possess none of the incidents of brokerage. Thus defendant's acquisition of title and storage of the goods in its warehouse may be for a "short period of time" but its exact duration depends upon the time when the stores need the goods. While section 21.79, pertaining to the licensing of commission merchants or brokers, provides that persons in that classification may take title to goods during transit and may store them for a "short period of time" without losing such business classification, the fact that the section states that a person who takes title does not *lose* the classification by short-lived storage does not mean he *becomes* a broker *because* of such temporary storage. Further, defendant on its own account sells the stored merchandise; defendant carries such merchandise on its books as its own inventory. None of these practices characterizes the operation of a broker. Moreover, defendant did not seek or obtain a license as a broker. We conclude that defendant's status as a wholesaler renders it subject to the tax imposed by section 21.166.

Our analysis of the second issue of the case, as we have stated, compels us to reject the trial court's conclusion that the entire amount of money collected by defendant from its affiliate stores for stipulated services, other than sales activities in the supplying of merchandise, constituted gross income under section 21.190.[5] The ruling apparently rests on the premise that all of the receipts pertained directly to the business activities in which defendant engaged and thus constitute the measure of the imposed tax.

Section 21.190 bases the tax upon the gross receipts of defendant for the services it rendered as a management corpora-

---

[5] Section 21.190 reads in part as follows: "(a) Every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically licensed by other provisions of this Article, shall pay a license fee in the sum of $12.00 per calendar year or fractional part thereof for the first $12,000 or less of gross receipts, and in addition thereto, the sum of $1.00 per year for each additional $1,000 or fractional part thereof, of gross receipts in excess of $12,000."

tion. The section taxed any person "engaged in any trade, calling, occupation, profession or other means of livelihood," measured by its "gross recipts." As defined by the pertinent portion of section 21.00, "gross receipts" are the "*total amount charged or received for the performance of any act, service or employment* of whatever nature." (Italics added.) The gross amount which defendant received in the form of its 5-6 per cent service deduction constitutes under the definition its gross receipts. While defendant's net receipts would equal the amount it received less its own operating costs of business, defendant properly paid taxes based upon the whole amount of its receipts for such services. The section, however, did not equate gross receipts with the totality of all monies handled by the taxpayers, an irrelevant figure which blanketed all of the taxpayer's activities.

The amounts defendant received in reimbursement for expenses paid by it for the stores, such as a store's payroll, rent, utilities, advertising, are not taxable as defendant's gross receipts. If monies which defendant collects on behalf of the stores represent its gross receipts, without deduction for the sums which it has paid or advanced for expenses of the affiliate stores, all monies received by an agent for his principal would comprise gross receipts of the agent. Yet defendant acts merely as an agent for handling money for the stores, paying out and receiving back sums advanced to the stores for their own operating expenses. Defendant's situation compares to that of an attorney who, upon the authorization of the client that the attorney reimburse himself, advances monies for costs of his client and is repaid from funds received on behalf of the client. A store's reimbursement of defendant for the store's own expenses is no more chargeable as "gross receipts" than the client's repayment of his attorney's advances.

We do not believe plaintiff may successfully rely upon *Rexall Drug Co.* v. *Peterson* (1952) 113 Cal.App.2d 528 [248 P.2d 433], a case in which the court sustained a license tax imposed under this same section upon the parent company as a service corporation to its subsidiaries. That case only involved Rexall's claim that it was not subject to *any* tax under section 21.190 by reason of the services it performed for its subsidiary drugstores. The opinion described the operation (113 Cal.App.2d at p. 529): "Rexall administers the whole business enterprise, maintains a head office in Los Angeles,

and furnishes accounting, financial, personnel, legal, executive managerial, and directive services to its subsidiaries. For these services Rexall charges each subsidiary its proportionate cost thereof. No profit is charged." The opinion does not disclose the manner in which Rexall performed its services, how it obtained its income, or the portion thereof on which it was taxed. The court thus does not pass upon the question before us: whether the tax should be payable on a basis over and above the amount received for the services rendered or should embrace all monies collected for and on behalf of, or from, the affiliate companies. The decision holds only that Rexall could not sustain its position that it owed no tax at all.

We believe that the ordinance includes as "gross receipts" those sums received for the use and benefit of the taxpayer and excludes those receipts which are held for the account of another. The definition of "gross receipts" (§ 21.00) as applied to income for rendered services prohibits the taxpayer's deduction for his own "labor or service costs, interest paid or payable, losses or any other expense whatsoever." If the draftsmen further intended that no deduction should be made for monies received for the account of another, they would have so stated. The section's denial of the right to exclude any "expense whatsoever" does not indicate an intent to deny exclusion of money recouped after payment of the expenses of another.

The judgment is affirmed insofar as it sustains the license tax imposed on defendant under section 21.166 but reversed as to the tax imposed under section 21.190.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J.,* concurred.

*Assigned by Chairman of Judicial Council.