[Civ. No. 25380.   First Dist., Div. Two.   May 29, 1969.]

COUNTY OF CONTRA COSTA, Plaintiff and Appellant, v. PACIFIC STATES AVIATION, INC., et al., Defendants and Respondents.

John A. Nejedly, District Attorney, John B. Clausen, Acting District Attorney, Jeffrey D. Polisner and Victor J. Westman, Deputy District Attorneys, for Plaintiff and Appellant.

Ring, Turner & Ring, Harold H. Turner and August J. Ginocchio for Defendants and Respondents.

AGEE, J.—The County of Contra Costa (hereafter "County") owns Buchanan Field, an airport. On December 19, 1961 it leased space thereon to Patterson Aircraft Co.[1] and on February 19, 1963 it leased adjoining space to Pacific States Aviation, Inc. (hereafter "Pacific").

Each lease recites that "the Lessee is a California corporation primarily engaged in commercial aviation retail sales and all other general activities of fixed base operation, including aircraft sales, repair, letting, etc."

Prior to the execution of the first of the above two leases, the County had handled the renting of cars and had received 20 percent of the gross amount of car rentals as its commission. The Patterson lease contains the following provision:

"Lessor [County] does acknowledge that there is presently existing a Hertz Rental Car concession at Buchanan Airport operated by Lessor herein, said concession presently in the possession of Lessor herein, and Lessor agrees to cooperate with Lessee and upon request transfer the Hertz Rental Car concession with the permission of Hertz to Lessee. Upon Lessee undertaking operation of said Hertz Rental Car concession or any other rental car concession, Lessee shall pay to Lessor *ten (10%) percent of gross receipts received by Lessee from rental of rental vehicles. . . .*" (Italics added.)

The lease executed to Pacific provides: "Upon Lessee undertaking operation of any rental car concession, Lessee shall pay to Lessor *ten (10%) percent of gross receipts received by Lessee from rental of rental vehicles.*" (Italics added.)

The term "gross receipts" is also used in both leases in connection with operations other than that involved herein. This explains why the definition of "gross receipts" is in a more generalized form than would be the case if the term were to be applied only to car rentals.

The understanding of the parties with respect to the term "gross receipts" is set forth in each lease as follows: "The term gross receipts, as used herein, . . . means the gross amount received by Lessee from all sales and cash payments received therefor, and credit extended at the time of a credit sale, all charges for services performed upon the demised premises and the gross amount received by Lessee from any

---

[1]Patterson Aircraft Co. assigned its lease to Fred M. Gore and William Gore, who in turn assigned it to Navajo Aviation, Inc. These parties will hereafter be referred to collectively as "Patterson."

and all of the sources of income derived from the business conducted upon said premises. In the case of the insurance sales and premiums, the term gross receipts shall refer only to the commissions received by Lessee.''

(Then follows a provision excepting from the term ''gross receipts'' (1) sales taxes, (2) certain wholesale sales, (3) sales of new and used aircraft, and (4) commissions relating to financing.)

After Patterson took over the supervision of the Hertz concession and up to May 16, 1963, Hertz paid one-half of the 20 percent commission directly to the County and the other one-half was paid by Hertz directly to Patterson.

On said May 16, 1963, with the County's consent, Hertz and Patterson entered into a written concession agreement in which the same 20 percent commission was provided for and the following provision added: ''The balance of 20% commission retained by Patterson Aviation Co. includes 10% commission payable to Contra Costa County, California.''

Pursuant to this provision Patterson thereafter paid one-half of the 20 percent commission directly to the County. The first of these payments was in the amount of $3,783.74 and was made by Patterson to the County on October 17, 1963. Patterson made a second payment of $2,000 on May 15, 1964, and a third payment of $2,843.34 on May 28, 1964.

On September 4, 1964 Patterson, with the consent of the County, assigned its lease to the Gore brothers, who in turn assigned it to Navajo Aviation, Inc., a corporation owned by them.

On September 16, 1964 Hertz and Navajo entered into a written agreement covering the same subject matter as the Patterson agreement. It contained the following provision, marked with an asterisk: ''*The payment of 20% commission retained by Navajo Aviation, Inc., includes 10% commission payable to Contra Costa County, California.''

On September 8, 1964, after the assignment of its lease, Patterson made a fourth payment of $2,093.39 to the County. *All* of these payments were computed upon the basis of 10 percent of the gross rentals received by Patterson from the various car renters and not upon the basis of the *commission* retained by Patterson from such rentals.

In an accounting rendered by Patterson to the County for the six months period ending December 31, 1963, the various other types of rentals were set forth and the amounts thereof

computed. However, the accounting omitted any mention of the Hertz rentals.

One of the County's auditors picked up this omission when auditing Patterson's books, which were kept at its office in Sacramento. He found an entry therein which showed an amount of approximately $2,400 due and payable to the County under the Hertz concession for the period of July 1 through December 31, 1963.

Patterson's books also contained a memo from Hertz showing gross receipts or "commissionable amounts" received from Patterson for the period May 16 to December 31, 1963, of $28,433.14, and the books recorded Patterson's liability to the County resulting therefrom.

The County made demand upon Patterson for 10 percent of this amount and Patterson paid it on May 28, 1964.

Patterson's attorney testified that he knew, during the period of negotiation for the Patterson lease, that the County had been getting 20 percent of the total amount of the Hertz rentals as a commission.

The foregoing conduct of Patterson during the earlier portion of the lease period is strong evidence of the intention of the parties as to what constitutes "gross receipts." (1 Witkin, Summary of Cal. Law (1960) Contracts, p. 249.)

The first indication in the record that Patterson differed with the County on the latter's right to 10 percent of the gross amount collected by it from car renters was that on July 28, 1965, Patterson filed claims against the County for alleged overpayments of Hertz commissions to the County during the years 1963 and 1964. No claim was made for the year 1962.

As to Pacific, it entered into a rental agreement with "Avis Rent A Car System" on March 5, 1963, and with "Jack Barrett Truck and Auto Leasing, Inc." on April 23, 1964. It takes the same position as Patterson as to the interpretation of its lease.

On November 19, 1965, the County filed this declaratory relief action. The *sole issue* is whether the County is entitled to 10 percent of the gross rentals collected by Patterson and Pacific from the various car rental customers or whether the term "gross receipts" refers only to the *commissions* paid to or retained by said lessees.

The lower court adopted the latter view and the County has appealed. Thus, under the existing judgment, if a car rental of $100 is paid to Patterson or Pacific, the County only receives 10 percent of the $20 commission, or $2.

When the nature and extent of the services rendered by a rental concessionaire are considered, be it by the County, Patterson, or Pacific, it seems ridiculous to believe that the County intended such a result, particularly in view of the fact that it had been, and could have continued to be, the recipient of *all* of the commissions involved herein.

## RULE OF PARSONS v. BRISTOL DEVELOPMENT CO.

An appellate court is not bound by the interpretation of a contract made by the trial court if (1) such interpretation is predicated solely on the terms of the contract, or (2) there is no conflict in the extrinsic evidence admitted to aid the trial court in making such interpretation, or (3) said interpretation is based upon incompetent evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

In the instant case, there is no conflict in the extrinsic evidence admitted to aid the trial court in its determination of the meaning of the term "gross receipts," which, as we have stated above, presents the only issue on appeal.

In its "Memorandum of Decision," the trial court sets forth its reasoning. It first refers to the clause in each of the leases that "Lessee shall pay to Lessor ten (10%) percent of the gross receipts received by Lessee from rental of rental vehicles."

The Memorandum then refers to the provision in each lease which, inter alia, defines "gross receipts" as "the gross amount received by Lessee from any and all of the *sources* of income derived from the business conducted upon said premises." (Italics added.)

The trial court treats the *source of income* involved herein as the *commission* on the rentals and not the rentals themselves. We hold that this is an erroneous interpretation and that the *source* of income is the rental collected and received by the Lessees under the two leases.

The trial court in its "Memorandum" opines that the term "gross receipts," as used in the leases, "means only those sums received for the use and benefit of the Lessees [20 percent] and excludes those receipts which are held for the account of another [the 80 percent share of Hertz, Barrett and Avis]."

The trial court cited only one case, *City of Los Angeles v. Clinton Merchandising Corp.* (1962) 58 Cal.2d 675 [25 Cal. Rptr. 859, 375 P.2d 851], as authority in support of its con-

clusion that "plaintiff is only entitled to ten per cent of the amount received by the defendants as commission income from the car rental company owning the vehicles."

In the *Clinton* case the question was the proper interpretation of the term "gross receipts" as used in a license tax *ordinance* enacted by the plaintiff-city. The basic difference between *Clinton* and the instant case is at once apparent. Here we have a lease agreement in which the parties have expressly agreed upon the definition of the term "gross receipts," as used in the agreement. In interpreting an ordinance, the court has no such interpretive aid.

The pertinent ordinance provision in *Clinton* reads as follows: "Every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, . . . shall pay a license fee in the sum of $12.00 per calendar year or fractional part thereof for the first $12,000 or less of gross receipts, and in addition thereto, the sum of $1.00 per year for each additional $1,000 or fractional part thereof, of gross receipts in excess of $12,000." (P. 680, fn. 5.)

Defendant Clinton is an affiliate of various retail men's clothing stores and performs many services for these stores, for which services it makes a charge. It collects all of the stores' receipts and pays all of their obligations. When necessary, it advances money to pay obligations of a store which is temporarily short. It was correctly held that the charge for such services constituted "gross receipts."

However, the plaintiff city also contended that when the advances were repaid, such repayments, as well as the sales receipts from the various stores, were "gross receipts" under the taxing ordinance.

The Supreme Court made a detailed analysis of the entire taxing ordinance and concluded that "gross receipts," as used in the ordinance "did not equate gross receipts with the totality of all monies handled by the taxpayers. . . ." (P. 681.)

It is clear that in the instant case, the trial court has erroneously equated "gross receipts" with "gross earnings." By allowing the County only $2 out of the $20 commission on a $100 rental, the trial court in effect made this change in the following lease provision: "Lessee shall pay to Lessor ten (10%) percent of the gross ~~receipts~~ [earnings] received by Lessee from rental of rental vehicles."

Cogent evidence that the parties did not intend that the County's share of the auto rental receipts should be a percentage of the *commission* to be paid by the car rental company to the concessionnaire is the fact that the County's compensation with respect to insurance sales and premiums is singled out as the *one type of commission* to be designated as a "gross receipt."

The lease agreement provides in this respect as follows: " In the case of the insurance sales and premiums, the term gross receipts shall refer only to the *commissions* received by Lessee." (Italics added.)

If the parties had so intended it would have been an easy matter to provide that the County's share of the car rentals would be based upon a percentage of the *commission* allowed by the auto rental companies to the concessionaire.

We have determined that the trial court erroneously interpreted "gross receipts" as applied to car rentals and that judgment should be entered in favor of the County in accordance with this decision.

Judgment reversed.

Shoemaker, P. J., and Taylor, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 23, 1969. Peters, J., was of the opinion that the petition should be granted.