[Civ. No. 44622. Second Dist., Div. One. Apr. 9, 1975.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v.
SECURITY SYSTEMS, INC., Defendant and Respondent.

**COUNSEL**

Burt Pines, City Attorney, Thomas C. Bonaventura, Assistant City Attorney, and Ronald A. Tuller, Deputy City Attorney, for Plaintiff and Appellant.

Gold, Herscher & Taback and Daniel M. Herscher for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—The City of Los Angeles sued defendant to recover $2,240.46 in business taxes[1] based on gross receipts for the calendar years

---

[1] The municipal court has no jurisdiction over controversies relating to tax levies. (Code Civ. Proc., § 89; *Cowles v. City of Oakland,* 167 Cal.App.2d Supp. 835, 838-839 [334 P.2d 1069]; *Unemp. etc. Com. v. St. Francis etc. Assn.,* 58 Cal.App.2d 271, 280 [137 P.2d 64].)

1968, 1969 and 1970, pursuant to sections 21.03[2] and 21.190,[3] Los Angeles Municipal Code, penalties and interest. Plaintiff was awarded $230.52 and interest. It appeals from the judgment, and urges inadequacy of the recovery.

Most of the facts are stipulated and the rest undisputed. Defendant is a corporation, a wholly owned subsidiary of West Coast Burglar Alarm Systems; in turn defendant has two wholly owned subsidiary corporations, Aaron Alarm and Sylvester Alarm (hereafter referred to as affiliates). The affiliates install, maintain and sell alarm systems. Defendant's function is to act as a financial and employer "conduit" for the affiliates. In this respect and on behalf of its affiliates defendant sends out all billings to their customers and collects for them all sums owing, pays all of their obligations, hires, carries on its own payroll and supplies to them all of the waged and salaried persons used by them in their various functions—installation, servicing, sales, central office activities and special contract labor[4]—and makes deductions and disbursements on behalf of these employees for all withholding taxes, social security, state disability compensation, etc. Defendant's corporate officers also serve in the same capacity for its affiliates, and defendant pays all of these salaries. At the end of each accounting year defendant by bookkeeping transaction allocates all income and expenses between the affiliates, and thus has no income or loss, and pays no income taxes.

All of the foregoing facts having been agreed upon or undisputed, we

---

[2]Section 21.03: "(a) Subject to the provisions of this Article, a business tax registration certificate must be obtained and a business tax must be paid by every person engaged in any of the businesses or occupations specified in Sections 21.50 to 21.198, inclusive, of this Article, and a business tax is hereby imposed in the amount prescribed in the applicable section. No person shall engage in any business or occupation subject to tax under the provisions of this Article without obtaining a registration certificate and paying the tax required thereunder."

[3]Section 21.190: "(a) For every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically taxed by other provisions of this Article, the tax shall be $24.00 per year or fractional part thereof for the first $12,000.00 or less of gross receipts, plus $2.00 per year for each additional $1,000.00 of gross receipts or fractional part thereof in excess of $12,000.00."

[4]The trial court made the following pertinent finding: "Security Systems, Inc. carries on its payroll all of the employees who render the services of installing, maintaining and selling alarm systems to customers as well as all other employees rendering services to the related group of entities. None of the operating companies has a payroll. At the end of the year certain journal entries are made allocating to the operating companies on the basis of gross income, the payroll expenses incurred by Security Systems, Inc. The function Security Systems, Inc. performs is that it acts as a conduit for all of the receipts and expenses of the operating companies."

are called upon to resolve a question of law only (*Jones-Hamilton Co.* v. *Franchise Tax Bd.,* 268 Cal.App.2d 343, 347 [73 Cal.Rptr. 896]; *Gibbons & Reed Co.* v. *Dept. of Motor Vehicles,* 220 Cal.App.2d 277, 285 [33 Cal.Rptr. 688, 927].)

▮ Plaintiff's position in the trial court was that defendant was the employer of all of the persons, including the corporate officers, who performed all of the functions of the affiliates,[5] and therefore defendant could be deemed to be in the business of providing all of the personnel, including the officers, to the affiliates similar to personnel agencies such as "Kelly Girl," "Manpower," etc. which furnish persons who are already *their* employees to pursue whatever endeavor the new "temporary employer" requires, except that defendant did not make a profit on its services. Accordingly, plaintiff contended, defendant's entire payroll sum, for which defendant realistically should be reimbursed by the affiliates whether or not it actually was, should constitute its "gross receipts," just as the total sums any personnel agency received from its customers (which in such instance would include a profit) would represent its gross receipts.

The trial court did not agree. It did, however, find and conclude that defendant's payroll in relation to its own office salaries and 25 percent of the officers' salaries should be considered as expenditures by defendant on its own behalf and, therefore, an assumed reimbursement for these items created gross receipts for defendant.[6] It further found that because all of the rest of the payroll classifications (for installation, service, central office sales, office and contract labor) represented payments to individuals who performed these duties exclusively for the affiliates, defendant had made the wage and salary payments to all these persons exclusively on behalf of the affiliates. Thus, the court concluded that reimbursement to defendant for these expenditures would create no gross receipts for it. In so ruling it relied on *City of Los Angeles* v. *Clinton Merchandising Corp.,* 58 Cal.2d 675 [25 Cal.Rptr. 859, 375 P.2d 851], wherein the court held that reimbursement to a "central managing, accounting and disbursing" (p. 677) corporation for sums it had paid out

[5]In opening brief appellant vigorously asserts that the evidence undisputedly establishes that it was such an employer. We find the evidence sufficient to constitute a prima facie demonstration of an employer-employee relationship between defendant and all of these persons. (*Robinson* v. *George,* 16 Cal.2d 238, 242 [105 P.2d 914]; *Woodall* v. *Wayne Steffner Productions,* 201 Cal.App.2d 800, 808 [20 Cal.Rptr. 572]; *Alford* v. *Bello,* 130 Cal.App.2d 291, 295 [278 P.2d 962].) Respondent in its brief makes no contention to the contrary.

[6]Accordingly, the court entered judgment for plaintiff based on the tax rate, penalties and interest applicable to these two items.

on behalf of its affiliates, which sums represented obligations of the affiliates, did not create gross receipts for the paying corporation. With the trial court's ruling we do not agree.

The record establishes that all of the personnel were employees of defendant thus, of course, it was required to and did pay them their wages and salaries on its own behalf, and not exclusively on behalf of the affiliates. Therefore the entire payroll, regardless of what form of or for whom work was performed by everyone carried thereon, was defendant's own obligation, and its, assumed reimbursement therefor would constitute its gross receipts. It is this circumstance which serves to distinguish this case from *City of Los Angeles* v. *Clinton Merchandising Corp.*, 58 Cal.2d 675 [25 Cal.Rptr. 859, 375 P.2d 851], because therein the Supreme Court found that defendant corporation had met the "payroll" of *one of its affiliates*, rather than its own. Reasoning again by analogy to the personnel agencies ("Kelly Girl," etc.), they themselves are obligated to pay all of their employees whom they furnish to other business enterprises, regardless of the type of activity performed for those businesses.

Dispositive of the issue raised on the undisputed facts is *Rexall Drug Co.* v. *Peterson*, 113 Cal.App.2d 528 [248 P.2d 433]. Therein suit was brought under section 21.190. Rexall furnished "accounting, financial, *personnel* [italics ours] legal, executive managerial, and directive services" (p. 529) to 10 subsidiary corporations wholly owned by it; and Rexall apportioned its costs for these services (it did not include any profit) among its subsidiaries. The court held that the total sums so expended and then recovered by Rexall constituted its gross receipts subject to business tax.

We conclude that respondent's entire payroll, including all officers' salaries, for the calendar years 1968, 1969 and 1970, and its assumed reimbursement therefor constitute its gross receipts subject to business tax. Although in its complaint plaintiff prays for recovery of $2,240.46, we cannot determine either from the pleading or the record exactly what this sum covers—whether it represents taxes only or includes penalties and/or interest—or even whether such computation is correct, thus, we reverse the judgment and remand the cause to the superior court to make such determination in accord with the views expressed in this opinion.

Wood, P. J., and Thompson, J., concurred.