[Civ. No. 45316. Second Dist., Div. One. June 27, 1975.]

INDEPENDENT CASTING-TELEVISION, INC.,
Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Cochran & Shepphird, John D. Cochran and John R. Shepphird for Plaintiff and Appellant.

Burt Pines, City Attorney, Thomas C. Bonaventura, Assistant City Attorney, and Richard A. Dawson, Deputy City Attorney, for Defendant and Appellant.

## Opinion

**THOMPSON, J.**—The case at bench involves the definition of gross receipts for the purpose of the Los Angeles city license tax. We conclude that the term encompasses the total of amounts received as consideration for the services of personnel employed by the taxpayer supplied as special employees to others where the taxpayer acts for his own account in employing the employees and not as an agent arranging the employment. We reverse a trial court judgment holding to the contrary.

The facts are stipulated. A majority of motion picture producers doing business within the City of Los Angeles (City) entered into a collective bargaining agreement with the Screen Extras Guild. The remaining motion picture producers within the City deal with extra players in a manner in accord with the agreement. The collective bargaining agreement recognizes the Screen Extras Guild as the exclusive bargaining agent for extra players (extras). The producer is required to hire extras at not less than a minimum wage established in the agreement. There is a provision for agreement between the extras and producers for specified adjustments in pay. The producer is required to give specified preferences to extras in hiring. A grievance procedure is established. Producers are required to make payments to specified trust funds for employee benefits.

The agreement provides for a preference in employment to extras registered on the rolls of a producer's designated casting agency. A producer is precluded from hiring extras from any other source unless the registered extras are unqualified, insufficient in number, or not readily available "according to the present general hiring practice of the above designated casting agencies." Additional persons may be registered on the rolls of the designated casting agencies only when the same standard of not readily available extras is met. The agreement states: "Only the Producer or its hiring agency shall perform any services in connection with the hiring or employment of extra players."

Independent Casting-Television, Inc. (Taxpayer) is not a party to the collective bargaining agreement but is named as a "designated hiring agency." Extras register with Taxpayer, filling out a personnel form and an Internal Revenue Service Form W-2 Employee's Withholding Exemption Certificate. In the years 1968 through 1973, an average of about 3,500 extras were registered with Taxpayer. Taxpayer maintains a file of

cards identifying the principal characteristics of extras registered with it. Producers call Taxpayer and request that Taxpayer have specified extras or extra players meeting a given description report to work on a specified production at a designated time and place. Taxpayer enters the order on a form order sheet. It reviews its file and selects extras meeting the producer's requirements, advising them to report to work in specified attire at the designated time and place. Taxpayer prepares and forwards an "Independent Casting Extra Talent Voucher" to the producer for each extra reporting for work. The form contains the name of the extra and the base rate of pay for work to be performed as specified in the collective bargaining agreement.

The extra reports for work at the designated time and place and performs his services under the direction and control of the producer. The voucher is signed by the extra. The producer inserts an indication of the time and type of work performed and in some cases the amount to be paid to the extra. The producer initials the voucher and forwards it to Taxpayer at the time the extra is dismissed. If the producer has not inserted the amount to be paid, Taxpayer computes the amount due the extra for the type of work performed by reference to the collective bargaining agreement. Taxpayer deducts from the sum due the extra the sums required by California and federal law and the collective bargaining agreement. It pays the extra the net amount after deductions by a check to which is appended an "Employee's Earning Statement" identifying the production company and specifying the deductions taken in computing the amount of the check. The statement also includes a tally of the gross amount paid to the extra for the year to date for work for all producers, and the deductions taken from that gross figure for the year to date. Each extra is paid by Taxpayer only after oral or written approval by the producer.

Taxpayer invoices the producer for the wages paid to extras, plus a negotiated amount intended to cover estimated payroll taxes imposed by law on the employer, fringe benefits due per the collective bargaining agreement, workmen's compensation insurance payments, and a "service charge." The producer pays the amount billed. Taxpayer pays the amount of tax withheld from the extra's pay, together with other taxes imposed upon employer and employee. It prepares and files the required employer's quarterly federal tax return, and a quarterly contribution return and report of wages under the Unemployment Insurance Code, and report of personal income taxes withheld. Taxpayer reports to the

appropriate governmental agencies "as if it were the employer" of the extras. At the end of each year, Taxpayer furnishes each extra with a federal W-2 form reporting his earnings, deductions, and withholding earned while performing services for producers "who authorized [Taxpayer] to pay [the] extras." Taxpayer reports and pays to the Screen Extras Guild-Producers Welfare Plan, the Motion Picture Industry Pension Plan, and the Motion Picture Health and Welfare Fund the amounts withheld from the extra's pay and the producer's contribution "in accordance with" the collective bargaining agreement. Taxpayer maintains workmen's compensation insurance for the extras and the producers are "added to the policy as additional insured employers, but solely as respects employees of [Taxpayer] while performing work for the [producers named]." Taxpayer is licensed by the state as an employment agency.[1] During the years 1968 through 1972, Taxpayer rendered its services to approximately 214 separate producers, and each producer used the services approximately five times each year.

The Los Angeles Municipal Code imposes a license tax for the privilege of doing business within the city (§ 21.03; *Carnation Co.* v. *City of Los Angeles,* 65 Cal.2d 36, 37-38 [52 Cal.Rptr. 225, 416 P.2d 129]) measured by gross receipts of the previous year (§ 21.14, subd. (a)). Gross receipts are defined in section 21.00, subdivision (a), of the Los Angeles Municipal Code as " 'The total amount of the sale price of all sales, the total amount charged or received for the performance of any act, service or employment of whatever nature . . . for which a charge is made or credit allowed, including all receipts, cash, credits and property . . . without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service costs, interest paid or payable, losses or any other expense whatsoever; . . ." During the tax years 1969 through 1972, the tax was imposed upon "every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically taxed by other provisions . . ." at the rate of $30 per year for the first $6,000 of gross receipts, plus $5 per year for each $1,000 of gross receipts in excess of $6,000. (§ 21.190, subd. (a).)[2]

---

[1]An "employment agency" includes a person who acts as a labor contractor—i.e., who employs another to render services to or under the direction of a third party. (Bus. & Prof. Code, § 9902, subd. (c).)

[2]Operative January 7, 1974, section 21.189.1, subdivision (b), was added to the Los Angeles Municipal Code. That section imposes the tax upon "Temporary-Help Agency" defined as "any person engaged in the business of supplying his employees to others on a

Taxpayer paid the Los Angeles business license tax pursuant to section 21.190 for the years 1969 through 1972 on the theory that the entire amount it received from producers was includable in its gross receipts and hence in the measure of tax. It filed timely claims for refund, contending that only the amount of its service charge plus the excess of the negotiated amounts intended to cover estimated payroll taxes, fringe benefits, and workmen's compensation insurance premiums over the actual amount of such items paid by Taxpayer was includable in its gross receipts. The claim was denied and a timely action was commenced by Taxpayer. The trial court accepted Taxpayer's theory as set out in its claim and granted it a judgment accordingly. The court denied interest on the judgment. The City appealed from the judgment granting the refund, and Taxpayer appealed from the portion of the judgment denying it interest.

Resolution of City's appeal depends upon characterization of the relationship of the extras, Taxpayer, and the producers. If the amounts which Taxpayer contends are excludable in computing its gross receipts were advanced by it as agent for the producers to satisfy payroll obligations of the producers to their employees, the reimbursement of the sums by the producers to Taxpayer is not includable within its gross receipts. (*City of Los Angeles* v. *Clinton Merchandising Corp.*, 58 Cal.2d 675, 681 [25 Cal.Rptr. 859, 375 P.2d 851].) If, however, those sums were paid by Taxpayer to satisfy its own obligation to its own employees and were includable within a charge for their services made by Taxpayer to the producers, then the entire amount paid by the producers is includable within Taxpayer's gross receipts since section 21.14 of the Los Angeles Municipal Code does not permit the deduction of labor or service costs in determining the amount of those receipts. (*City of Los Angeles* v. *Security Systems, Inc.*, 46 Cal.App.3d 950, 954 [120 Cal.Rptr. 600]; *Rexall Drug Co.* v. *Peterson*, 113 Cal.App.2d 528, 529-530 [248 P.2d 433].)

Since the facts have been stipulated, we treat the issue of characterization as one of law. (*City of Los Angeles* v. *Security Systems, Inc., supra*, 46 Cal.App.3d at pp. 953-954; *Jones-Hamilton Co.* v. *Franchise Tax Bd.*, 268 Cal.App.2d 343, 347 [73 Cal.Rptr. 896].) ▆ · We conclude from

---

temporary basis; provided however that such term shall not include an agency for the brokerage of labor for a fee to be paid either by the applicant for employment or the prospective employer." The rate of tax pursuant to section 21.189.1 is $21 per year for the first $6,000 of gross receipts and $3.50 per year for each additional $1,000 of gross receipts in excess of $6,000.

the stipulated facts that the extras were employees of Taxpayer and that it paid the amounts claimed by it to be excludable from its gross receipts for its own account and not as the agent of the producers. The collective bargaining agreement contemplates use of designated casting agencies of which Taxpayer is one in the hiring of extras. Taxpayer treats the extras as its employees for state and federal tax purposes, workmen's compensation, and the collective bargaining agreement. It withholds income tax from sums due the extras and remits the amounts withheld. It pays the employer's taxes imposed upon the payroll incurred for extras. It pays premiums upon workmen's compensation insurance and the amounts required by the collective bargaining agreement to be disbursed to various trust funds to cover fringe benefits. Taxpayer bills the producers not only for wages computed per a schedule but also for a negotiated sum representing items incidental to employment with no provision that an excess of billing over actual expense be refunded to the producer or that the producer make up any deficiency. In essence, Taxpayer acts in a fashion consistent with its employment of the extras and its supplying their services to the producers.

Taxpayer seeks to avoid the compelled result by arguing that: (1) the producer and not Taxpayer exercises control over the extras when they are on the job; and (2) the arrangement by which it treats extras as employees for some purposes is required by administrative convenience and economic necessity in order to avoid the difficulty and expense of extra record keeping that would be involved if each extra were treated administratively as an employee of a particular producer during the period the extra was working for the production company.

It is not significant that the extras are special employees of the producer during their work (see 2 Witkin, Summary of Cal. Law (8th ed.) Workmen's Compensation, § 91) so long as they are also employees of Taxpayer which supplied their services to the producers. It is the latter fact to which the incidents of the Los Angeles city license tax attaches by reason of section 21.00 and 21.190. It is the fact that Taxpayer meets its own payroll and incidental expenses and not the technicalities of the joint employment relationship that results in the payments from the producers being includable in taxpayer's gross receipts.

Nor can Taxpayer escape the tax consequences of the plan of operation adopted by it because the plan is sound in a business sense. Tax consequences follow what is done irrespective of motivation. If good

business management dictates that a particular mode of operation be employed, Taxpayer is in no position to complain that the economies of operation attained by that mode are offset to a degree by the tax which the law imposes upon it. Taxpayer, after all, determined to treat the extras as its employees and to bill the producers for a variety of items including not only direct wage expense but also a negotiated figure for various incidental expenses and a fee for its services. Having done so, it cannot escape the tax consequences which do not permit it to deduct its own payroll and incidental expenses.

We thus conclude that the trial court erred in determining that Taxpayer is entitled to a refund of the taxes paid by it. Having done so, we do not reach Taxpayer's contention that it is entitled to interest on the refund erroneously ordered by the trial court.

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied August 28, 1975.