[Civ. No. 46267. Second Dist., Div. Three. Dec. 30, 1975.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v.
MEYERS BROTHERS PARKING SYSTEM, INC.,
Defendant and Respondent.

**COUNSEL**

Burt Pines, City Attorney, Thomas C. Bonaventura, Assistant City Attorney, and Pedro B. Echeverria, Deputy City Attorney, for Plaintiff and Appellant.

Nossaman, Waters, Krueger, Marsh & Riordan, Nossaman, Waters, Krueger & Marsh, James A. Hamilton, Arthur R. Chenen and Lary Lawrence for Defendant and Respondent.

## OPINION

**COBEY, Acting P. J.**—The City of Los Angeles (hereafter City) appeals from a judgment denying it recovery of certain allegedly delinquent business taxes from Meyers Brothers Parking System, Inc. (hereafter Meyers), assessed upon Meyers' management and operation under a management agreement with Century City, Inc. (hereafter Century City), of certain public parking facilities belonging to Century City during the calendar years 1967 through 1971.[1] The appeal lies. (Code Civ. Proc., § 904.1, subd. (a).)

The controversy between the City and Meyers is over the proper measure for these business taxes — that is, whether Meyers' gross receipts upon which the taxes were levied should include only Meyers' management fees from Century City or should include as well Meyers' general operating and payroll expenses which, pursuant to the aforementioned agreement with Century City, were reimbursed to it by Century City.

Meyers paid the business taxes at issue under Los Angeles Municipal Code section 21.190. Subdivision (a) of this section imposes a business tax upon an independent contractor, which all concede Meyers was, in its management and operation of Century City's public parking facilities. The trial court also concluded, however, that Meyers in such management and operation for and on behalf of Century City was Century City's agent and therefore subdivision (c)(6) of the section applied. This subdivision provides that the term "gross receipts" as used in the section does not include receipts of persons acting as agents or brokers "other than receipts received as commissions or fees earned, or charges of any character made or compensation of any character received for the performance of any service as agent or broker; . . ." Thus the fundamental issue between the parties on this appeal is whether Meyers

---

[1]Century City paid business taxes under Los Angeles Municipal Code section 21.56 upon all the gross receipts it received through Meyers from the operation of these parking facilities.

The original written agreement was actually between Century City and Meyers Bros. of California, Inc. Meyers, however, guaranteed performance of this agreement by Meyers Bros. of California, Inc. An amendment to this agreement was entered into about September 20, 1968 by Century City and "Meyers Bros. Parking - Western Corp., successor by merger to Meyers Bros. of California, Inc."

During the years in question Meyers, a specialist in the field, operated a number of other parking facilities in the City of Los Angeles as owner or lessee for its own benefit. It paid to the City business taxes upon the gross receipts of these facilities pursuant to Los Angeles Municipal Code section 21.56.

was not only an independent contractor but also an agent of Century City in its management and operation of Century City's public parking facilities.

■  An agent is one who represents another, called the principal, in dealing with third persons. (Civ. Code, § 2295.) Agency and independent contractorship are not *necessarily* mutually exclusive legal categories as independent contractor and servant or employee are. In other words, an agent may also be an independent contractor. (See Rest.2d Agency (1958) § 2, com. b, pp. 13-14.) One who contracts to act on behalf of another and subject to the other's control, except with respect to his physical conduct, is both an agent and an independent contractor. (*Id.,* § 14N, p. 80.)

■  We hold that Meyers, during the years in question in its performance of its written management agreement with Century City, was under the foregoing definition both an agent for Century City and an independent contractor in its management and operation of the public parking facilities belonging to Century City.[2] Meyers provided overall management and supervision of the operation of these parking facilities. It employed at Century City's expense all personnel required at the facilities such as managers, attendants and cashiers and it oversaw their work. It provided, again at Century City's expense, all equipment and supplies necessary to operate the facilities and, again at Century City's expense, kept them in proper maintenance and repair. It also obtained, again at Century City's expense, the types and kinds of insurance authorized by Century City for these operations. In short, Meyers, in its just-described conduct, acted as an independent contractor.

On the other hand, Meyers, in its management and operation of these facilities, acted on behalf of the owner of them, Century City, and under Century City's general control. Speaking generally, this control was exercised in three ways. First, under the agreement, Meyers was reimbursed only for its general operating and payroll expenses to the extent such expenses had been incorporated in an annual operating budget (including changes therein) and approved in advance by Century

---

[2]We note in this connection that the aforementioned written agreement, between Century City and Meyers, contains a first numbered paragraph reading in pertinent part as follows: "The Owner employs the Agent to operate for and on its behalf those certain public parking facilities located at Century City . . . ."

The City stipulated with Meyers that the management agreement set forth their relationship, the services provided to Century City by Meyers during the years in question, and Meyers' remuneration therefor.

City. Second, under the agreement, Century City controlled "operating policy." This included control over parking rates, validation privileges and rates and certain parking commitments or rights. Third, under the agreement, upon Century City's written request Meyers was required to take all reasonable steps under its collective bargaining contract with the union involved to remove any of its employees who were unsatisfactory to Century City.

Accordingly, Meyers, in its management and operation of these public parking facilities, also acted as Century City's agent. This being the case, its business taxes payable under the Los Angeles Municipal Code should have been computed, as they were, under both subdivisions (a) and (c)(6) of section 21.190. (See *City of Los Angeles* v. *Clinton Merchandising Corp.*, 58 Cal.2d 675, 680-682 [25 Cal.Rptr. 859, 375 P.2d 851]; *Independent Casting-Television, Inc.* v. *City of Los Angeles*, 49 Cal.App.3d 502, 507 [122 Cal.Rptr. 416].) Stated otherwise, the proper measure for these taxes was Meyers' management fees and nothing else.

This being so, we do not reach Meyers' further contention that the imposition of these business taxes upon its reimbursed general operating and payroll expenses as well would violate article I, section 3, subdivision (5), of the Los Angeles City Charter and the equal protection provisions found in section 1 of the Fourteenth Amendment to the United States Constitution and in article I, section 7, subdivision (a), of the California Constitution.

The judgment under appeal is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied January 28, 1976, and appellant's petition for a hearing by the Supreme Court was denied February 26, 1976.