[Civ. No. 48856. Second Dist., Div. Four. Dec. 20, 1976.]

HOSPITAL MEDICAL COLLECTIONS,
INC. et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

48

**COUNSEL**

Burt Pines, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, and Thomas J. Theis, Deputy City Attorney, for Defendants and Appellants.

David P. Connelly for Plaintiffs and Respondents.

**OPINION**

**JEFFERSON (Bernard), J.**—This appeal concerns an action to recover taxes paid under protest. Plaintiff taxpayers are three corporate collec-

tion agencies, Hospital Medical Collections, Inc., Petroleum Collections, Inc., and Mutual Collection Bureau. Named as defendants were the City of Los Angeles and Rex E. Layton, City Clerk. The case was tried below pursuant to a written stipulation of facts. Judgment was rendered in favor of plaintiffs and against defendants in the sum of $75.16 together with costs of $53.20. Defendants have appealed from the judgment.

At issue in this case is the proper interpretation of certain provisions contained in the Los Angeles Municipal Code, article I, chapter 2, the "Business Tax Ordinance."[1] Defendant City of Los Angeles imposes a tax on business activity conducted within the city (§ 21.03), and defendant city clerk is empowered to make the assessments (§ 21.16). The tax is measured by the amount of "gross receipts" of the taxpayer in the preceding year (§ 21.14, subd. (a)), and is payable by collection agencies engaged in business in the city (§ 21.78).

The "gross receipts" which constitute the measure of the tax are defined in section 21.00, subdivision (a), as "[t]he total amount of the sale price of all sales, the total amount charged or received for the performance of any act, service or employment of whatever nature it may be, . . ." The expense of doing business is not deductible in arriving at the amount of "gross receipts."

Section 21.78, which deals specifically with collection agencies, provides in subdivision (c) thereof that "[i]n computing the tax imposed by this section, there shall be deducted from gross receipts the amount received as the result of collections made outside the State of California."

Plaintiffs' supplemental complaint, including the exhibits attached thereto, sought refund of taxes paid on collections alleged to have been made outside the State of California. However, the written stipulation of facts, entered into in the trial court by plaintiffs and defendants, and which constituted the factual basis for the trial, tells us the following: Plaintiffs are California corporations whose place of business is within the City of Los Angeles. They are licensed collection agencies, regularly engaged in that activity; they accept assignments of indebtedness from creditors, and proceed to attempt collection from the debtors in return for a portion of the proceeds as commissions for their services. The

---

[1] Unless otherwise specified, all references to code sections are to sections contained in the Los Angeles Municipal Code.

assignments concern debts owed by persons residing in the City of Los Angeles and elsewhere.

The written stipulation of facts recites, in paragraph 14: "When assigned a claim against an out of City debtor, plaintiffs expend normal telephone and mail collection activity. If collection is unsuccessful by this method, the claim is assigned to an *out-of-city*, independent, licensed collection agency in the area where the debtor is located." (Italics added.)

These independent, licensed collection agencies, located in the area where the debtor is located, the stipulation states, agree to collect the debt in return for a commission. The claim by plaintiffs is then assigned to such independent collection agency, and such agency proceeds with its own collection activity in the debtor's out-of-city area. If the independent agency succeeds in collecting the claim, it then forwards to plaintiffs the proceeds of its collection activity, less the amount retained by such agency as its commission.

Plaintiffs maintain books which show the assignment by the creditor to plaintiffs, and the full commission paid by the creditor—whether retained out of the collected proceeds by plaintiffs or by the assignees of plaintiffs—and the amount ultimately remitted by plaintiffs to the creditor. It is not clear from the written stipulation of facts whether, in the event the proceeds are received by plaintiffs after out-of-city collection, plaintiffs then make an additional charge against the proceeds before remitting the net amount to the creditor. Plaintiffs' Exhibit A to the supplemental complaint suggests that the plaintiffs' assignee agency retains a substantial part of the total commission charged the creditor, but not all of it, unless the debt involved is so small that the assignee agency retains the entire amount.

Plaintiffs' books and records are kept to show those amounts actually received by them as commissions, and also to show separately those amounts which have been retained outside the city as commissions of the assignee collection agencies. When computing the amount of "gross receipts" subject to the city business tax, plaintiffs have, in the past, deducted from the total amount of commissions charged their creditor-assignors, the commission amounts retained by the out-of-city assignee collection agencies. The defendant city clerk took issue with this practice, claiming that, in deducting the assignee agencies' commission

amounts, plaintiffs were deducting a business expense, not allowed by section 21.00, subdivision (a). Accordingly, defendant city clerk assessed plaintiffs on July 10, 1973, for unpaid business taxes for the years 1970, 1971 and 1972. Plaintiffs paid the taxes under protest, and duly exhausted their administrative remedies before filing this suit for a refund.

The emphasis in the trial court appears to have been focused on the meaning to be attributed to the term "gross receipts," although it is unclear whether the issue was debated in terms of out-of-city collections or out-of-state collections. On appeal, plaintiffs repeatedly refer to the commissions at issue as those collected outside of the state of California, while defendants argue with reference to out-of-city collections—those collected outside the City of Los Angeles.

Plaintiffs point out that they were assessed for amounts that they never in fact received; that they were merely a bookkeeping intermediary between the creditor-assignors and the forwardee collector-assignees. Since the stipulation is not entirely clear as to whether plaintiffs, as "bookkeepers," also charged the creditor-assignors (at least the cost of processing at their local offices), we assume, only for the purposes of argument, that plaintiffs received no direct benefit from the forwarded assignments.

We note, first of all, that section 21.00, subdivision (a), not only refers to "gross receipts" as those dollar amounts received by the taxpayer, but also includes in its definition "the total amount *charged* . . . for the performance of any act, service or employment . . . ." (Italics added.) The framers of the ordinance apparently intended to include as "gross receipts" the total amount charged for a particular business transaction, without limitation in the form of requiring actual collection by the taxpayer. Thus, the form of the taxpayer's books and records showing the transaction does not determine the transaction's character. The essential inquiry must be directed toward the presence—or absence—of a "taxable local event" (*City of Los Angeles* v. *Shell Oil Co.* (1971) 4 Cal.3d 108, 122 [93 Cal.Rptr. 1, 480 P.2d 953]), which, in this case, concerns the existence of business activity by the taxpayer within the city.

Plaintiffs contend that the "taxable event" was in fact the *collection* of debts outside the City of Los Angeles. Defendants point out that the parties' written stipulation of facts establishes that plaintiffs accepted

assignments in Los Angeles from their creditor clients. In the case of a debtor located outside of Los Angeles, plaintiffs would make efforts to collect the debt through mail and telephone activities. If such activities proved unsuccessful, the plaintiffs would then select a licensed collection agency located in the area where the debtor was located and assign and forward the claim to the selected collection agency. Defendants further emphasize that plaintiffs retained the responsibility for receiving payment of the proceeds from the forwardee agencies making collection from the debtors, and the responsibility for remitting net proceeds to the creditor-assignor customers, with whom plaintiffs still maintained privity. In addition, plaintiffs were obligated, after collection from the debtors, to provide a full accounting to the creditor-assignors. All of these activities were carried on within the City of Los Angeles.

As our discussion below will disclose, bookkeeping procedures do not determine the location of business activity—and taxability.

Plaintiffs suggest that the forwardee collectors are independent contractors, maintaining a distinct and separate relationship with the creditor assignors who originally dealt with plaintiffs. There have been a number of decisions where the determination of what constitutes "gross receipts" turned, at least in part, on the taxpayer's relationships with other business entities. These decisions have usually involved a situation where the taxpayer's books did not disclose "gross receipts" attributable to the taxpayer.

In *City of Los Angeles* v. *Clinton Merchandising Corp.* (1962) 58 Cal.2d 675, 681-682 [25 Cal.Rptr. 859, 375 P.2d 851], the California Supreme Court observed that the term "gross receipts" could not be equated with "the totality of all monies handled by the taxpayers, . . ." but that it referred to those sums "received for the use and benefit of the taxpayer." The *Clinton* court held that the term "gross receipts" excluded those sums in the possession of the taxpayer which were "held for the account of another." (See also, *City of Los Angeles* v. *Meyers Bros. Parking System, Inc.* (1975) 54 Cal.App.3d 135 [126 Cal.Rptr. 545].)

Where the taxpayer has been involved in a close relationship with corporate affiliates, involving agency or independent contracting but routine transfer of funds from one entity to another, emphasis has been placed on the independent *business activity* of the taxpayer disclosed by the transactions, regardless of how the books and records have been kept.

Thus, where the taxpayer has itself incurred obligations it must discharge, the amount so discharged has been held to constitute the "gross receipts" of the taxpayer. (*City of Los Angeles* v. *Security Systems, Inc.* (1975) 46 Cal.App.3d 950 [120 Cal.Rptr. 600]; *Independent Casting-Television, Inc.* v. *City of Los Angeles* (1975) 49 Cal.App.3d 502 [122 Cal.Rptr. 416].)

What these cases emphasized, although they came before the court with varying factual stipulations, was that the city business tax is one that imposes a tax upon *activity*—business-generating activity. If such activity is being conducted by the taxpayer, it becomes subject to the tax.

■ We conclude that plaintiffs were engaged in business activity in Los Angeles when they were assigned debts for collection here and engaged thereafter in procedures to collect the debt, including the selection of out-of-city collectors to obtain proceeds from debtors located outside the City of Los Angeles. The fact that the forwarding collectors retained their commissions out of the proceeds collected instead of billing plaintiffs for their services is immaterial to the question of the taxability of such commissions to the plaintiffs as taxpayers. The *charge* to the creditor-assignors was, in our view, the "taxable local event" that produced the "gross receipts" upon which defendants based their assessment.

Plaintiffs also argue that the "extraterritorial elements" involved in out-of-city collections compel the resultant determination that defendants were attempting to tax beyond the jurisdiction of the City of Los Angeles. Assuming for the moment, that the amounts in issue here were collected by the forwardee collection agencies outside the City of Los Angeles, but not outside the State of California, we reject plaintiffs' contention in this regard.

■ Business activity within a taxing jurisdiction may be subject to tax regardless of extraterritorial elements which occur at some point in the transactions involved. (*Irvine Co.* v. *McColgan* (1945) 26 Cal.2d 160 [157 P.2d 847, 167 A.L.R. 934].) There have been a series of cases dealing with the problem of intercity taxation in California. In *City of Los Angeles* v. *Belridge Oil Co.* (1954) 42 Cal.2d 823 [271 P.2d 5] and *City of Los Angeles* v. *Belridge Oil Co.* (1957) 48 Cal.2d 320 [309 P.2d 417], the California Supreme Court held that gross receipts arising from transactions having certain extraterritorial elements may still be the. measure of

a tax imposed by a city so long as they are directly attributable to business activity within the city. Thus, it has been held that where manufacturing takes place within a city—although sales are made without—the manufacturing process provides sufficient basis for imposing a tax measured by "gross receipts" in terms of the amount realized from subsequent out-of-city sales. (*Carnation Co.* v. *City of Los Angeles* (1966) 65 Cal.2d 36 [52 Cal.Rptr. 225, 416 P.2d 129].)

"It is only when the final operation yielding the finished product is inappreciable in comparison with the extraterritorial activities producing the component parts that a 'manufacturing' tax based on *unapportioned* gross receipts may be said to reach significant extraterritorial values." (*General Motors Corp.* v. *City of Los Angeles* (1971) 5 Cal.3d 229, 240 [95 Cal.Rptr. 635, 486 P.2d 163].) (Italics added.)

Apportionment problems arise when the taxpayer conducts substantial business activity outside the city as well as activity within—for example, in the area of selling. In *General Motors,* the court reiterated the "legal and constitutional framework within which our determinations [concerning intercity taxation] must be made. '[I]t is clear that in spite of the absence of a specific "commerce clause" in our state Constitution, other provisions in that Constitution—notably those provisions forbidding extraterritorial application of laws and guaranteeing equal protection of the laws . . . —combine with the equal protection clause of the federal Constitution to proscribe local taxes which operate to unfairly discriminate against intercity businesses by subjecting such businesses to a measure of taxation which is not fairly apportioned to the quantum of business actually done in the taxing jurisdiction. On the other hand, those constitutional principles do not *prohibit* local license taxes upon businesses "doing business" both within and outside the taxing jurisdiction; . . .' " (*General Motors, supra,* 5 Cal.3d 229, at p. 238) if there is a proper apportionment. (See, also, *Shell Oil Co., supra,* 4 Cal.3d 108, 124.)

██ In the instant case, however, we are dealing neither with manufacture nor sale, but with the providing of a service. The contract of assignment—which generates the subsequent activity—occurs in the City of Los Angeles, and the ultimate conclusion of the collection transaction also occurs in the city. The presence of intervening extraterritorial elements between the beginning and concluding activities, does not make for nontaxability under those circumstances, nor are the extraterri-

torial elements so substantial as to require apportionment. (See *Carnation, supra,* 65 Cal.2d 36.)

Thus, we determine that, within the meaning of section 21.00, subdivision (a), the out-of-city commissions involved in the instant case were properly includable in plaintiffs' "gross receipts." ■ However, section 21.78, subdivision (c), specifically allows local collection agencies to deduct from "gross receipts" the amount received by them as the result of collections made outside the State of California. Defendants, who presented arguments on appeal premised on both out-of-city and out-of-state collections, seek to persuade us that this exclusion was not available to plaintiffs because plaintiffs *themselves* were not making out-of-state collections, but were forwarding the claims to other collection agencies located outside of California, and that these latter collection agencies made the out-of-state collections.

We regard the suggested interpretation as unsound. Section 21.78, subdivision (c), does not, in allowing exclusions from "gross receipts" of "collections made outside the State of California," identify the entity making the collection; it simply provides that the proceeds from *all* collections so made, without limitation, may be deducted.

■ Thus, it may be seen that it is of crucial importance in the case at bench whether the commissions in dispute here were collected outside of California—in which case the judgment entered below reflected a correct decision, if taken alone—or whether the commissions were collected outside the City of Los Angeles but within the State of California—in which case reversal would be indicated.

The record on appeal presents an insurmountable problem in this regard. As indicated previously herein, the supplemental complaint and exhibits incorporated as part of such complaint referred to the amounts in dispute as out-of-state collections. The written stipulation of facts entered into by the parties, however, constitutes the factual basis upon which the judgment was rendered. This stipulation sets forth that the commissions involved were out-of-city collections, but with no indication that out-of-city collections meant collections made outside of the State of California.

The trial court signed and filed two sets of findings of fact and conclusions of law which are inconsistent. The first set of findings,

reciting that the commissions had been collected outside of the State of California, were signed by the trial judge on March 11, 1975. The record does not tell us what transpired thereafter. But a second set of findings of fact and conclusions of law, reciting that the commissions were those collected from debtors located out of the City of Los Angeles, was also signed by the trial judge, on May 5, 1975. No mention is made in this set of findings with respect to whether the debtors were located outside of the State of California. Judgment for plaintiffs was entered July 22, 1975.

This sequence of events has reduced the record to a state of total confusion. We would have no difficulty holding that the first set of findings of fact and conclusions of law, duly signed by the trial judge, constitutes the operable set, except that, as written, they are not supported by the parties' written stipulation of facts, which refers only to out-of-city commissions. Although the second set of findings signed by the trial judge accurately reflects the written stipulation of facts executed by the parties, these findings cannot, under the circumstances presented here, replace the first set of findings already signed. It may be that the commissions involved were all collected outside of California by forwardee collection agencies from debtors located out of the state as the supplemental complaint and plaintiffs' brief on appeal suggest, but we cannot so conclude because the parties' written stipulation of facts, upon which the judgment was based, states otherwise.

Of necessity, therefore, we must remand the matter for a new trial, hopefully one that will be based upon a written stipulation of facts that will accurately reflect the exact source of the commissions in dispute—on collections made out of the State of California, or, within its boundaries, but outside of the City of Los Angeles—and that only one set of findings of fact and conclusions of law—internally consistent, will be signed in support of the judgment rendered.

The judgment appealed from is reversed. Each party shall bear its own costs on appeal.

Kingsley, Acting P. J., and Dunn, J., concurred.